[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
05/10/99
THOMAS K. KAHN
CLERK

No. 97-6217

D.C. Docket No. CR-96-51-E-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY LAVERNE PRUITT, OSCAR HERNAN PENA,
MIGUEL A. GARRIDO, DAAIYAH JAMEELAH MUSTAFA,
DOUGLAS GENE MAYBERRY and MARLAN EVERETTE ENGLE,

Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of Alabama

**(May 10, 1999)**

Before DUBINA and BARKETT, Circuit Judges, and JONES*, Senior Circuit Judge.

JONES, Senior Circuit Judge:

This is a direct criminal appeal brought by six defendants found guilty of conspiring to possess with intent to distribute marijuana, in violation of 21 U.S.C. §846; and laundering their drug proceeds thereafter, in violation of 18 U.S.C.§1956(a)(1)(A)(i). The six defendants-appellants are

_____

*Honorable Nathaniel R. Jones, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

Tony Pruitt, Oscar Pena, Miguel Garrido, Daaiyah Mustafa, Douglas Mayberry, and Marlan Engle. At issue, with respect to Pena and Garrido, is the constitutionality of a motor vehicle search conducted on July 29, 1995. Pursuant to Knowles v. Iowa, _U.S._, 119 S.Ct. 484 (1998) - a Supreme Court decision issued subsequent to the trial of this matter - and earlier Eleventh Circuit precedent, we find the search of defendants' vehicle violative of the Fourth Amendment, and therefore reverse. In all other respects, we affirm the convictions and sentences of the remaining co-defendants.

**I.**

The drug conspiracy at issue in this case transported marijuana from California, and other western locales, to Alabama, where the drugs were distributed and sold. Pena and Garrido, located in Los Angeles, supplied the marijuana. The Alabama-based Engle and Mayberry purchased the drugs with funds wired to Los Angeles Thereafter, couriers, working on behalf of the conspiracy, traveled to California and other destinations, and returned to Alabama with the purchased marijuana. The drugs were distributed in Alabama via two networks: one operated by Engle (based in Birmingham); the other, by Mayberry (based in Tuskegee).

The six defendants were indicted in the Middle District of Alabama in March 1996. Each was charged with having violated 21 U.S.C. §846 (Count I, the conspiracy count) and 18 U.S.C. §1956(a)(1)(A)(i) (Count II, the money laundering count). Following the taking of individual not-guilty pleas, all six proceeded to trial, with the assistance of counsel, in December 1996. The jury found Pruitt guilty of Count I only, and the remaining five co-defendants guilty of both Counts I and II. Thereafter, the co-defendants were sentenced to incarceration terms as follows:

Pruitt, Pena and Garrido: 80 months; Mustafa: 96 months; Engle: 240 months; and Mayberry: 292 months. All six co-defendants now timely appeal.

## II.

The subject stop and search occurred near an Interstate 40 exit ramp in Memphis, Tennessee.[1] (Pena was apparently transporting marijuana from California to Alabama, by way of Tennessee.) Just after midnight on July 29, 1995, Pena was pulled over for speeding by Officer Joseph Moore of the Shelby County, Tennessee Sheriff's Department.[2] Garrido was then a passenger in the vehicle, along with two others not parties to this appeal.

The stop was automatically recorded on Moore's police videocamera. The resulting videotape (Gov't Ex. 344(c)) shows the following sequence of events:

> 1. Moore asked Pena to step out of the van, and Pena did so. Pena accompanied Moore to the rear of the van;
>
> 2. Moore advised Pena that he was speeding - traveling 65 miles per hour in a 55 m.p.h. zone. In broken but understandable English, Pena apologized to Moore. Moore responded by asking Pena his age, and whether he owned the van;
>
> 3. Moore directed Pena to accompany him to his police car, so he could check on the status of Pena's driver's license and issue him a speeding ticket;

---

[1] Pena does not challenge the constitutionality of his stop, just his subsequent detention and search. We agree that, because Pena was speeding, and a traffic violation had thus occurred, probable cause existed for the stop. Accordingly, the stop was reasonable for purposes of the Fourth Amendment, and withstands review. See Whren v. United States, 517 U.S. 806, 810 (1996); United States v. Griffin, 109 F.3d 706, 707 (11th Cir. 1997) (per curiam). Thus, we limit our discussion to the constitutionality of Moore's post-stop conduct.

[2] Although Moore testified at trial that Pena was also stopped because he "rolled through a stop sign," J.A. vol. 13, at 65, Moore never so advised Pena. Nor did Moore cite Pena for that offense. See J.A. vol. 1, doc. 549, ex. A (listing "speeding" as Pena's sole violation). Accordingly, we view this as a case in which Pena was simply stopped for speeding.

4. Once in the police car, Moore began asking Pena questions unrelated to the stop, e.g., where Pena's family resides in Memphis. Moore then asked Pena if his registration and insurance papers were in the van. Pena responded affirmatively, and Moore left to retrieve them;

5. Standing outside the van, Moore asked Garrido (in the front passenger seat) for the registration and insurance papers. He also asked the two other passengers who they were going to visit in Memphis, and that person's street address;

6. Moore returned to his police car where, instead of completing Pena's ticket, he proceeded to ask Pena: (a) to identify the three other van passengers; (b) how much he paid for the van; (c) what kind of work he does for a living; (d) whether Garrido is his brother; and (f) why they have different last names;

7. Again postponing the writing of Pena's ticket, Moore asked Pena if he had anything illegal in the van; Pena said "no." Moore followed up by asking Pena if he had pistols or weapons in the van; Pena again said "no." Moore then asked Pena if he had drugs in the van; Pena said "no" a third time;

8. Moore, having no reasonable suspicion of criminal activity by Pena, nonetheless asked him if he could search the van. To that end, he handed Pena a written consent form - in Spanish - to be signed. Pena declined to sign the form, see J.A. vol. 1, doc. 549, ex. B, whereupon Moore told him that he needed yet additional time to complete the writing of the speeding ticket. Instead of completing the ticket, however, Moore picked up his police radio to declare that, "I have a refusal" - a code phrase indicating to the other officers that they should bring a drug-sniffing dog to the scene;

9. While awaiting the dog's arrival, which took more than fifteen minutes, Moore detained in his police car - again without a reasonable suspicion of criminal activity - Pena, Garrido, and the other two van passengers as well. While waiting, Moore finally issued a "courtesy warning" to Pena instead of a traffic ticket. See id., ex. A; and

10. Nearly one-half hour after Pena's initial stop, the drug dog arrived. The dog sniffed the outside of the van, and indicated the presence of drugs. The van was then searched by Moore and other officers acting without a warrant. The search revealed significant amounts of marijuana (approximately 81 pounds). Pena and Garrido were arrested and read their Miranda rights (in English and in Spanish).

Following his guilty finding, Pena challenged the constitutionality of Moore's search in a Fed. R. Crim. P. 33 motion for a new trial.[3] See J.A. vol. 1, doc. 549. The district court denied the motion, finding that Moore's conduct leading up to his search was supported by the required reasonable suspicion of Pena's guilt. Id., doc. 561 at 5-7. We review that decision for an abuse of discretion. United States v. Pope, 132 F.3d 684, 687-88 (11th Cir. 1998). This standard includes review to determine whether the district court was guided by an erroneous legal conclusion. Koon v. United States, 518 U.S. 81, 100 (1996). "A district court by definition abuses its discretion when it makes an error of law." Id.

## III.

---

[3] The motion was based, in part, upon Pena's concern that Moore was biased against him, and may have committed perjury at trial. This is more than mere speculation on Pena's part: just prior to Pena's sentencing, the prosecuting Assistant United States Attorney wrote to the district judge below to advise him that Moore had apparently provided false testimony in a suppression hearing conducted in an unrelated case. See J.A. vol. 1, doc. 549, ex. C. In that case, as here, Moore stopped a motorist for speeding, detained the occupants, searched the vehicle, and found drugs. Moore's supposedly perjurious testimony in the unrelated case centered on whether or not he wrote the speeding ticket on the scene, as he claimed. Subsequent forensic testing appeared to suggest that Moore wrote the speeding ticket after the arrest, then lied under oath about when the ticket was written. Id.

Pena and Garrido now argue that Moore's apparent bias is a sufficient grounds upon which to award them new trials. In light of our finding below - that Moore violated their Fourth Amendment rights - Pena and Garrido are each entitled to a reversal of their convictions. Thus, the merits of their "bias argument" need not be reached. Nonetheless, we are severely troubled by the allegations of Moore's perjurious conduct in another case, and his violation of the Fourth Amendment in this case. As police officers well know, evidence which constitutes the "fruit of a poisonous tree" is inadmissable to prove a criminal suspect's guilt. Wong Sun v. United States, 371 U.S. 471, 488 (1963). Convictions, such as those at issue in this appeal, will withstand review only if they are consistent with the Fourth Amendment.

We addressed the constitutionality of detentions following a routine traffic stop in United States v. Tapia, 912 F.2d 1367 (11th Cir. 1990), where we held:

In the absence of consent, the reasonableness of [police officer] Guthrie's decision to detain and search the vehicle in which appellant Bernardino Tapia was a passenger is governed by the principles set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). According to Terry, even in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity. In justifying such an intrusion, the "reasonableness" standard requires that a police officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21, 88 S.Ct. at 1879 (footnote omitted). In this regard, "reasonable suspicion" is determined from the totality of the circumstances, United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), and from the collective knowledge of the officers involved in the stop. United States v. Williams, 876 F.2d 1521, 1524 (11th Cir.1989); United States v. Cotton, 721 F.2d 350, 352 (11th Cir.1983), cert. denied, 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). Such a level of suspicion is obviously considerably less than proof of wrongdoing by a preponderance of the evidence, INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984), or even the implicit requirement of probable cause that a fair probability that evidence of a crime will be found. Sokolow, 109 S.Ct. at 1585. Nevertheless, "reasonable suspicion" must be more than an inchoate "hunch," and the [F]ourth [A]mendment accordingly requires that police articulate some minimal, objective justification for an investigatory stop. Id.; Williams, 876 F.2d at 1524.

Id. at 1370 (brackets added; footnote deleted). Since the issuance of Tapia, we have consistently held that once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (i.e., a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Griffin, 109 F.3d at 708 (citing Tapia, 912 F.2d at 1370); accord United States v. Holloman, 113 F.3d 192, 196 (11th Cir. 1997) (per curiam) (noting that a police stop cannot otherwise last "any longer than necessary to process the traffic violation"). Our sister circuits are

6

of the same view. In <u>United States v. Hunnicutt</u>, 135 F.3d 1345 (10th Cir. 1998), for example, the

Tenth Circuit, consistent with <u>Tapia</u>, found:

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. <u>See</u> <u>United States v. Gonzalez-Lerma</u>, 14 F.3d 1479, 1483 (10th Cir.), <u>cert.</u> <u>denied</u>, 511 U.S. 1095, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994). The investigative detention usually must "last no longer than is necessary to effectuate the purpose of the stop," and "[t]he scope of the detention must be carefully tailored to its underlying justification." <u>Florida v. Royer</u>, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983).

> Lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. <u>See</u> <u>United States v. Soto</u>, 988 F.2d 1548, 1554 (10th Cir.1993). Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter. <u>See</u> <u>Gonzalez-Lerma</u>, 14 F.3d at 1483. The officer had not returned Mr. Hunnicutt's license at the time he asked about guns and drugs, so further questioning unrelated to the initial stop must have been supported by an objectively reasonable suspicion of illegal activity. <u>See id.</u>; <u>United States v. McKneely</u>, 6 F.3d 1447, 1451 (10th Cir.1993) (holding that encounter cannot become consensual while officer retains driver's documents).

> A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity. Among those factors that have justified further questioning are having no proof of ownership of the vehicle, having no proof of authority to operate the vehicle, and inconsistent statements about destination. <u>See</u> <u>United States v. Jones</u>, 44 F.3d 860, 872 (10th Cir.1995); <u>Gonzalez-Lerma</u>, 14 F.3d at 1483-84; <u>United States v. Pena</u>, 920 F.2d 1509, 1514 (10th Cir.1990), <u>cert. denied</u>, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). Also among those are driving with a suspended license, <u>see</u> <u>Jones</u>, 44 F.3d at 872, and reluctance to stop, <u>see id.</u>; <u>Villa-Chaparro</u>, 115 F.3d at 802; <u>United States v. Walraven</u>, 892 F.2d 972, 975 (10th Cir.1989). In particular, the inability to offer proof of ownership or authorization to operate the vehicle has figured prominently in many of our cases upholding further questioning. <u>See</u> <u>United States v. Horn</u>, 970 F.2d 728, 732 (10th Cir.1992); <u>United States v. Turner</u>, 928 F.2d 956, 959 (10th Cir.), <u>cert. denied</u>, 502 U.S. 881, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); <u>United States v. Arango</u>, 912 F.2d 441, 447 (10th Cir.1990), <u>cert. denied</u>, 499 U.S. 924, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991); <u>see also</u> <u>United States v. Fernandez</u>, 18 F.3d 874, 879 (10th Cir.1994) (The "defining characteristic of our traffic stop jurisprudence is the defendant's lack of ... some ... indicia of proof to lawfully operate and possess the vehicle in question, thus giving rise to objectively reasonable suspicion that the vehicle may be stolen.")

Id. at 1349.

Tapia and Hunnicutt are both in conformance with Knowles. In Knowles, the Supreme Court invalidated a car search under the Fourth Amendment, and reversed the driver's drug conviction, because "[o]nce Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." Knowles, 119 S.Ct. at 488. Writing for a unanimous court, Chief Justice Rehnquist reasoned that routine traffic stops are "relatively brief encounter[s]...'more analogous to a so-called 'Terry stop' than to a formal arrest.'" Id. (ellipsis added and deleted) (quoting Berkemer v. McCarty, 468 U.S. 420, 437 (1984)). The High Court further reasoned that, because Knowles was cited for speeding, but not arrested, the search of his car was not authorized by the "search incident to arrest" doctrine, even though the state traffic laws under which Knowles was cited provided for arrest as an alternate police remedy. Id. at 486-87. The Court found the search incident to arrest doctrine supported by two historical rationales - "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial" - neither of which applies in a routine stop where, without more, an officer just has evidence of a traffic violation. Id. at 487.

Such is the case here. At the time Pena, Garrido and the others were stopped, Moore had before him evidence of speeding. His questioning following the stop, therefore, should have been directed to securing Pena's license, registration and insurance papers. Once such brief questioning was completed, Pena and the others should have been free to go, as Moore was provided at that time with no reasonable suspicion of their criminal activity. In such circumstances, additional "fishing

8

expedition" questions such as "What do you do for a living?" and "How much money did your van cost?" are simply irrelevant, and constitute a violation of Terry.

Our viewing of the police videotape leaves us with the impression that Moore was acting on an unsupported hunch instead of a reasonable suspicion that Pena and Garrido had broken anything other than the speeding laws.[4]  As Tapia and Hunnicutt make clear, a lengthy detention and car search under such circumstances violate the Fourth Amendment.  Although we resist the temptation to read an improper motive into Moore's conduct, we are concerned that this appears to be yet another case in which a driver, once stopped, is unreasonably detained because of his/her race or national origin (Pena and Garrido are both Hispanic), or because the driver is from out-of-state (Pena's van had California license plates).  Accord Tapia, 912 F.2d at 1371 ("[T]he factors cited by the district court in this case, e.g., being Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama), do not provide a minimal, particularized basis for a conclusion of reasonable suspicion on the part of Officer Guthrie.  Even when considered together

---

[4] The fact that Moore's hunch ultimately turned out to be correct - i.e., that Pena and Garrido *were* illegally transporting marijuana in their van - is irrelevant for purposes of the Fourth Amendment.  To hold otherwise would open the door to patently illegal searches by government officials, who would attempt to justify the legality of their conduct after-the-fact. The Fourth Amendment requires a showing of reasonable suspicion at the time the motor vehicle occupants are detained, not thereafter, once the results of the car or van search are known.  Scott v. United States, 425 U.S. 917, 923 (1976) (Brennan, J., dissenting from the denial of certiorari) ("[T]here is a grave danger that determinations of reasonableness will be dictated by hindsight evaluations of evidence uncovered by [searches].  This, in turn, is bound to generate a strong temptation to [search] first and then use the fruits of the [search] in an effort to demonstrate that the [search] was justified.  Courts have repeatedly refused to validate searches and seizures in this after-the-fact manner...").

9

and in light of all the facts, such observations fail to suggest that appellant and his brother were engaged in any criminal activity other than speeding on the highway").

**IV.**

The convictions of Pena and Garrido are therefore **REVERSED** to the extent that they turn on Moore's unconstitutional detention and search. To that end, this matter is **REMANDED** to the district court; in all other respects, Pena's and Garrido's convictions are **AFFIRMED.**

Having carefully reviewed each of the other arguments presented by the remaining co-defendants, we find those arguments without merit, and therefore **AFFIRM** the convictions and sentences of appellants Pruitt, Mustafa, Mayberry and Engle pursuant to 11th Cir. R. 36-1.[5]

---

[5] That rule provides:

**Rule 36-1. Affirmance Without Opinion**

When the court determines that any of the following circumstances exist:

(a) the judgment of the district court is based on findings of fact that are not clearly erroneous;
(b) the evidence in support of a jury verdict is sufficient;
(c) the order of an administrative agency is supported by substantial evidence on the record as a whole;
(d) a summary judgment, directed verdict, or judgment on the pleadings is supported by the record;
(e) the judgment has been entered without a reversible error of law;

and an opinion would have no precedential value, the judgment or order may be affirmed or enforced without opinion.