Royce FRITZ, Sr., Plaintiff,

v.

CITY OF CORRIGAN, Corrigan Police
Department, Robert Garrison Chesire
and William Stacy Lowe, Defendants.

No. 9:00–CV–037.

United States District Court,
E.D. Texas,
Lufkin Division.

June 25, 2001.

David Joseph Guillory, Nacogdoches, TX, for plaintiff.

William S. Helfand, Rachel Denise Ziolkowski, Magenheim, Bateman 7 Helfand, Houston, TX, for defendant.

## MEMORANDUM

COBB, District Judge.

This is a civil rights lawsuit arising out of a traffic stop. Defendants move for summary judgment on Plaintiff's claims. Because Defendants' detention of Plaintiff during the stop was not an unreasonable search and seizure under the Fourth Amendment, Defendants' motion is granted.

### I. Background

Plaintiff Royce Fritz and his wife were driving from Houston to their house in Lufkin after returning from a trip to Montana on January 24, 1998. As Plaintiff was driving through the city of Corrigan, Texas, Defendant Robert Cheshire, a police officer with the City of Corrigan (City), stopped Fritz for speeding. It was approximately 1:00 a.m. and the roads were dark and deserted. Officer Cheshire informed Fritz that his radar unit had measured Fritz's speed at 72 m.p.h. in a 55 m.p.h. zone. Officer Cheshire requested some identification and proof of insurance from Fritz, and, after receiving the information, returned to his patrol car to run a search on the license number. Finding no outstanding tickets or warrants, Officer Cheshire returned to Fritz's car and requested that he sign the citation. Fritz signed the ticket, and then wrote, "was not speeding," above his signature. Fritz alleges that at this point Officer Cheshire's demeanor changed from professional to abusive. He ordered Fritz to exit and stand at the rear of his car. Cheshire tore up the citation and returned to his patrol car to write out a new one. He then instructed Fritz that he was to sign only his name on the citation and that if he did not do so, Cheshire would "take care of him." He also allegedly "screamed at and verbally abused and made threats of physical violence to Mr. Fritz." Fritz also asserts that Defendant Lowe, a private citizen who was "riding along" with Cheshire, pointed a pistol at him at this time. Fritz was detained behind the car for approximately 20 minutes. The evidence indicates that the entire incident consumed no more than 25 minutes.

Fritz contested the ticket and the case was tried to a jury on September 2, 1998 in the City's municipal court. The trial resulted in a hung jury. On the advice of counsel, and rather than face retrial, Fritz pled *nolo contendere*. The court ordered him to pay a fine and to complete a course of deferred adjudication, which he did complete. Fritz then brought this lawsuit.

Fritz makes a claim for wrongful detention or *de facto* arrest in violation of the Fourth Amendment against Officer Cheshire and the City. *See* 42 U.S.C. § 1983. Because Lowe is not a governmental actor and, therefore, is not subject to § 1983, Fritz also asserts a state law false arrest theory against him. He had asserted other claims against all defendants, but abandoned them earlier in the case. Defendants now move for summary judgment.

### II. Standard of Review

Summary judgment is proper when the movant shows that the pleadings, affidavits, and other evidence available to a court establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of informing the court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Once the moving party has properly supported its motion, the burden shifts to the party opposing summary judgment to demonstrate genuine issues of material fact necessitating a trial, using the evidentiary sources set forth in Rule 56(c). *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The proof must be of such quality that "a reasonable jury could return a verdict for the nonmoving party." *Andrew,* 477 U.S. at 248, 106 S.Ct. 2505. The Court will decide all reasonable doubts and inferences in the light most favorable to the party opposing the motion. *See Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994).

## III. Analysis

Defendants present three arguments to support their summary judgment motion. First, they argue that there was no Fourth Amendment violation because the so-called *Heck* doctrine bars Plaintiff's claims and, if not barred, the evidence establishes that probable cause existed for both the traffic stop and the detention. Second, Defendants contend that the claims against the City are untenable because, even if Officer Cheshire's actions violated the Fourth Amendment—which they assert it did not, there is no evidence that the City maintained any policy which might have led to that violation. Finally, they maintain that Officer Cheshire is entitled to qualified immunity because his actions were objectively reasonable.

### A. Fourth Amendment Violation

 Plaintiff's claims are not entirely prohibited by the doctrine found in *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). "*Heck* dictates that when a person such as [Plaintiff] brings a section 1983 claim against the arresting officers the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Hainze v. Richards,* 207 F.3d 795, 797 (5th Cir.2000). In this case, it would not. Because Fritz pled *nolo contendere* to the charges surrounding his speeding citation, he is barred from bringing any claims related to his conviction unless he can prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364; *see also, Thompson v. City of Galveston,* 979 F.Supp. 504, 507 (S.D.Tex. 1997) (dismissing plaintiff's subsequent claims of false arrest where she had pled *nolo contendere* to the charges the basis of her arrest). Thus, the Court rejects Fritz's contention that a fact issue exists on whether he was actually speeding. He waived the right to contest that issue by pleading *nolo contendere.* Fritz, however,

also argues that his "30 plus minute detention (10 in the car, 20 out) at gunpoint at the rear of his car, after he had already signed the ticket promising to appear violated, under all the circumstances, the Fourth Amendment." (Pl.'s Resp. Def.'s Mot.Summ.J. at 6.) That claim is not proscribed by *Heck.* Whether his detention was constitutionally reasonable will not affect his conviction for speeding.

Defendants next assert that, even if Fritz's action is not barred by the *Heck* doctrine, the evidence establishes that the stop and detention were reasonable under the Fourth Amendment. They argue that (1) the initial stop of the Plaintiff was reasonable because Officer Cheshire had probable cause to believe that Fritz was speeding; (2) requesting Plaintiff to exit his car was reasonable given the late hour and desertedness of the highway at the time; (3) the "mere act" of drawing or pointing a weapon during an investigatory detention does not cause it to exceed the bounds of a Terry stop or become a *de facto* arrest; and (4) even if the prolonged detention did become a *de facto* arrest, such an arrest was not conducted in an extraordinary manner, unusually harmful to an individual's privacy or physical interests. (Def.s' Mot.Summ.J. at 7.) Because these factors demonstrate that Fritz was not subjected to an "unreasonable search and seizure," which is all that he is protected from under the Constitution, the Court agrees with Defendants' motion. *See* U.S. Const. amend. IV.

■ The "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Such a stop, therefore, must be reasonable.

*United States v. Shabazz,* 993 F.2d 431, 434 (5th Cir.1993). A dual inquiry guides the judicial determination of reasonableness. *See Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* the Court asks whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances justifying the initial interference. *Id.* Fritz cannot argue that the initial stop of his car for speeding was improper. *See Whren,* 517 U.S. at 810, 116 S.Ct. 1769 ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). He argues instead that the length and tenor of the detention at some point transformed the lawful *Terry* stop into an unlawful *de facto* arrest.

■ As for the length of the detention, there is no rigid time limitation on the lawfulness of a *Terry* stop. *See United States v. Sharpe,* 470 U.S. 675, 686–87, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). In a valid traffic stop, an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation. *See United States v. Dortch,* 199 F.3d 193, 198 (5th Cir.1999); *Shabazz,* 993 F.2d at 437. Absent probable cause that another crime is or has been committed, the officer must release the person once the citation is issued. *Id.*

■ This is not the typical traffic stop case where a police officer extends the detention of a citizen for the purpose of continuing or expanding the search for criminal activity. *See, e.g., Dortch,* 199 F.3d at 198 (search unreasonable no reasonable or articulable suspicion that plaintiff was trafficking in drugs); *United States v. Pruitt,* 174 F.3d 1215, 1221 (11th Cir.1999) (detention of defendants and search of van following traffic stop was not authorized under Fourth Amendment,

where officer's questioning after stop was not directed to securing license, registration, and insurance papers of driver defendant, but to "fishing expedition" questions such as what he did for a living and how much the van he was driving cost). Officer Cheshire does not allege that he ever suspected that Fritz was committing or had committed another crime. In this case, the detention was due to an officer's belief that the manner in which Fritz signed the citation was improper. Fritz, however, contends that Officer Cheshire acknowledges that "the signature on the first ticket ['Royce Fritz was not speeding'] constitutes a promise to appear and ... that there is nothing in the law that would prohibit a citizen from making notes in the margins of the ticket." (Pl.'s Resp. Def.s' Mot.Summ.J. at 8.) The evidence does not support this conclusion.

Officer Cheshire does admit—in accordance with Fourth Amendment law—that once a person signs the promise to appear, the officer must release him. But he does not admit that this is such a case. Officer Cheshire concludes in his deposition testimony that the phrase "J. Royce Fritz was not speeding" constitutes a statement, not a signature. And Texas law requires a signature. *See* TEX.TRANS.CODE ANN. § 543.005 (Vernon 1999). Moreover, he notes that allowing those ticketed for speeding to write in the margins—while not expressly prohibited by statute—is not proper because it might encourage people to "writ[e] all over the ticket." (Cheshire dep. 41:2–12.) The Court will not say that this is an unreasonable concern because it will not second-guess the methods employed officers on the scene. *See Sharpe,* 470 U.S. at 686, 105 S.Ct. 1568. Moreover, whether Officer Cheshire's beliefs at the time of the incident are infallible is not the issue. The issue is whether his decision to reissue the citation and require Fritz to sign the ticket with only his name was

objectively reasonable. Because Officer Cheshire's belief that Fritz's signature on the citation was not proper, his decision to reissue the citation and require Fritz to sign only his name was not unreasonable standing alone.

But Fritz also contends that the other objective factors combined with the reissuance of the citation render the stop unreasonable. He argues first that he did not consent to exit his car; rather, he was ordered to do so by Officer Cheshire. Fritz alleges that this action was "punitive" and the only reason he was ordered to exit his car is because Officer Cheshire was angry and irritated that Fritz had included the "was not speeding" language with his signature. As to Officer Cheshire's subjective state of mind and motivations, the Court concludes that these are not relevant to the reasonableness of his actions. The Supreme Court has been unequivocal in holding that [s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. *See Whren,* 517 U.S. at 813, 116 S.Ct. 1769; *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) ("[s]ubjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional"). Even if the motivations underlying Officer Cheshire's actions were less than pure, however, it is settled that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *See Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam). "The touchstone of *Mimms* ... is that officer safety is potentially threatened whenever officers stop a vehicle." *U.S. v. Ibarra–Sanchez,* 199 F.3d 753, 761 (5th Cir.1999) (quoting *Mimms,* 434 U.S. at

111, 98 S.Ct. 330 ("[W]e have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile.")). Once Officer Cheshire determined that the stop was going to take longer than he had expected he was within the bounds of the Fourth Amendment to order Fritz to exit and step to the rear of his vehicle.

Fritz further asserts that pointing a gun at a person accused of speeding renders the seizure unreasonable under the Fourth Amendment. Although Defendants' deny that the ride-along passenger Lowe did hold a gun on Fritz, they offer no summary judgment evidence to support that contention. The Court must, therefore, assume that Lowe did possess a gun and point it at Plaintiff. Even with that assumption, however, the Court rejects Fritz's claim. Fifth Circuit case law is clear that simply drawing or pointing a weapon during a *Terry* stop does not render the action unreasonable. *See United States v. Campbell,* 178 F.3d 345, 349 (5th Cir.1999) ("[D]rawn guns and handcuffs do not necessarily convert a detention into an arrest."); *United States v. Sanders,* 994 F.2d 200, 207 (5th Cir .1993) ("[I]n and of itself, the mere act of drawing or pointing a weapon during an investigatory detention does not cause it to exceed the permissible bounds of a Terry stop or to become a de facto arrest."). Although that circuit has also noted that "[t]he line between a valid investigatory stop and an arrest requiring probable cause is a fine one," *Ibarra–Sanchez,* 199 F.3d at 761, that line was not crossed in this case. The lack of any overt threat to use force against the Plaintiff and the failure of anyone to verbally acknowledge the presence of a gun during the stop, while not alone determinative, do lend support to the Court's conclusion that the stop was not conducted in an "extraordinary manner, unusually harmful to [Plaintiff's] privacy interests." *Whren,* 517 U.S. at 818, 116 S.Ct. 1769.

As Supreme Court precedent and common sense demonstrate, "even ordinary traffic stops entail 'a possibly unsettling show of authority'; that they at best 'interfere with freedom of movement, are inconvenient, and consume time' and at worst 'may create substantial anxiety.'" *Whren,* 517 U.S. at 817, 116 S.Ct. 1769. But as the Supreme Court recently held, "the question whether a search or seizure is 'extraordinary' turns, above all else, on the manner in which the search or seizure is executed." *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001). In light of all the circumstances, the Court cannot conclude that the stop and detention of Fritz was unreasonable or extraordinary. In this case, there was no physical contact, Plaintiff suffered no physical harm, he was not humiliated, and he was immediately released upon signing the ticket with just his name. Perhaps most important, however, is that any delay in receiving the ticket was due almost entirely to Plaintiff's decision to sign the ticket in the manner in which he did. By comparing portions of the traffic stop to the recent and tragic sinking of a Japanese fishing boat by the U.S. Navy—as Fritz does—he further demonstrates the degree to which his claim is based on hyperbole and not on law. The facts of this case readily distinguish it from others where unreasonable seizures have been found, *see, e.g., Dortch,* 199 F.3d at 198 (delay designed to extend search); *Pruitt,* 174 F.3d at 1221 (same), and from those that involve searches conducted in an extraordinary manner, *see, Lago Vista,* 121 S.Ct. at 1558 (discussing cases). The Court, therefore, concludes that Officer Cheshire's actions were reasonably related in scope to the circumstances justifying the initial interference.

### B. Municipal Liability and Qualified Immunity

In addition to the lack of any Fourth Amendment violation, summary judgment is also appropriate because Fritz has shown no municipal liability and has not rebutted Defendants' assertion of qualified immunity.

 Defendants contend that the claims against the City are untenable because, even if Officer Cheshire's actions violated the Fourth Amendment—which they assert it did not, there is no evidence that the City maintained any policy that might have led to that violation. Plaintiff has completely failed to (1) produce any evidence that any City policy or custom which has subjected him to a deprivation of a constitutional right or (2) show that the particular injury he allegedly suffered was incurred because of the execution of that policy or custom. *See Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.) (*en banc*), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Although Fritz seeks to establish municipal liability by contending that the City's "ride along" program was the moving force behind his alleged constitutional violation, such policies are not unconstitutional and, more important, he has produced no evidence to support this assertion. He has cited no evidence to suggest, for instance, that the City's training policies or programs are constitutionally deficient. The Court agrees with Defendants' contention.

 Defendants also maintain that Officer Cheshire is entitled to qualified immunity because his actions were objectively reasonable. Once an officer raises a qualified immunity defense, a plaintiff must "come forward with evidence sufficient to create a genuine issue as to whether [the officer's] conduct was objectively reasonable in light of the clearly established law." *See Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992). Plaintiff has not met his burden on this issue, and thus the Court agrees with Defendants' contention.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment on Plaintiff's Fourth Amendment claim is GRANTED. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and DISMISSES those claims under 28 U.S.C. § 1367(c) without prejudice.