[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-13036
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 29, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-80114-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RASHID HARRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 29, 2005)**

Before BLACK, HULL and WILSON, Circuit Judges.

PER CURIAM:

Rashid Harris appeals his conviction and sentence for possession of a

firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Harris asserts the district court erred in: (1) denying his motion to suppress evidence seized during a lawful traffic stop, and (2) failing to suppress his post-arrest statements because he was not properly advised of his Miranda rights and he did not voluntarily, knowingly, or intelligently waive those rights. Harris further argues that, in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005), the district court erred by enhancing his sentence based on his status as an armed career criminal and by applying the Guidelines as mandatory. We affirm Harris's conviction, but vacate and remand for resentencing consistent with *Booker*.

## I. DISCUSSION

A.   *Motion to Suppress Evidence*

We review "a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact under the clearly erroneous standard and the district court's application of law to those facts *de novo*." *United States v. Desir*, 257 F.3d 1233, 1235–36 (11th Cir. 2001). The Fourth Amendment protects individuals from unreasonable searches and seizures. A traffic stop is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 99 S. Ct. 1391, 1396 (1979). Nevertheless,

2

because a routine traffic stop is a limited form of seizure, it is analogous to an investigative detention, and this Court has therefore held a traffic stop will be governed by the standard set forth in *Terry v. Ohio*, 88 S. Ct. 1868 (1968). *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999). In *Terry*, the Supreme Court clarified a person is seized "whenever a police officer accosts an individual and restrains his freedom to walk away." 88 S. Ct. at 1877. "[T]he police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking." *United States v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989).

"[T]he reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 95 S. Ct. 2574, 2579 (1975). The Fourth Amendment nevertheless requires a police officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 88 S. Ct. at 1880. When determining whether reasonable suspicion exists, the court must review the "totality of the circumstances" of each case to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 122 S. Ct. 744, 750 (2002). We have held

3

reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence, or even the implicit requirement of probable cause that a fair probability that evidence of a crime will be found." *Pruitt*, 174 F.3d at 1219 (internal citations omitted).

"It is well established that officers conducting a traffic stop may take such steps as are reasonably necessary to protect their personal safety." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (quotation marks and brackets omitted). Therefore, the officer may conduct a protective search of the driver, the passengers, and the passenger compartment of the vehicle. *Id.*, *see also Michigan v. Long*, 103 S. Ct. 3469, 3481 (1983). The Supreme Court in *Long* clarified that in such instances, the scope of a search of a vehicle extends to "those areas to which [the driver] would generally have immediate control, and that could contain a weapon." 103 S. Ct. at 3481.

An examination of the totality of the circumstances supports the conclusion the search of the compact disc binder was reasonably necessary to protect Officer Creelman's safety. The record shows that Officer Creelman walked to the back of his patrol car to retrieve a written consent form, Harris reached into the car and grabbed the compact disc binder. Moreover, according to the officer's testimony, the binder was large enough to conceal a weapon and the officer was concerned

4

the binder might contain a weapon. Therefore, because the search of the binder was necessitated by reasonable concerns for officer safety, the district court did not err in denying Harris's motion to suppress.[1]

B.     *Motion to Suppress Statements*

"Whether a person was in custody and entitled to *Miranda* warnings is a mixed question of law and fact; we will review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. McDowell*, 250 F.3d 1354, 1361 (11th Cir. 2001). "When considering a ruling on a motion to suppress, all facts are construed in a light most favorable to the successful party." *United States v. Behety*, 32 F.3d 503, 510 (11th Cir. 1994).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court considered the scope of the Fifth Amendment privilege against self-incrimination and held the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 86 S. Ct. 1602, 1612 (1966). Accordingly, the Supreme Court delineated the following

---

[1] We decline to address Harris's arguments concerning consent because our analysis under *Terry* controls.

5

procedure that, although not constitutionally mandated, safeguards the right against compelled self-incrimination. First, before a person in custody is interrogated, he must be informed in clear and unequivocal terms of his right to remain silent. Second, the admonition against self-incrimination must be accompanied by an explanation that anything said can and will be used against the individual in court. Third, the person must be clearly informed he has the right to consult with a lawyer and to have a lawyer with him during the interrogation. Fourth, the advice of the right to counsel must be accompanied by the explanation that, if the person is indigent, a lawyer will be appointed to represent him. *Id.* at 1624–27.

Importantly, the Supreme Court has never insisted *Miranda* warnings be given in the exact form described in that decision. In *California v. Prysock*, the Supreme Court stated the rigidity of *Miranda* does not extend "to the precise formulation of the warnings given a criminal defendant," and "no talismanic incantation [is] required to satisfy its strictures." 101 S. Ct. 2806, 2809 (1981). Therefore, the inquiry is simply whether the warnings reasonably "conveyed [to a suspect] his rights as required by *Miranda*." *Id.* at 2810.

As with most rights, the accused may waive the right against self-incrimination, so long as the waiver is voluntary, knowing, and intelligent. *Miranda*, 86 S. Ct. at 1612. A waiver is effective where the "totality of the

6

circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." *Moran v. Burbine*, 106 S. Ct. 1135, 1141 (1986) (quotation omitted). A statement obtained from a defendant during custodial interrogation is admissible only if the government carries its "heavy burden" of establishing a defendant has executed a valid waiver of the privilege against self-incrimination and the right to counsel. *Miranda*, 86 S. Ct. at 1628.

Although Harris argues the *Miranda* warnings he received immediately before the taped interview were insufficient, and thus made any waiver invalid, this argument is without merit. According to Officer Creelman's testimony, Harris was read his *Miranda* rights from a pre-printed card twice—once almost immediately following his arrest and once at the jail while waiting in the holding cell. Although the card was not introduced into evidence and its contents were not presented, Officer Creelman testified he read the card directly verbatim and asked Harris after every question, "Do you understand?" While it is true the "government's burden may not be met by presumptions or inferences that when police officers read to an accused from a card they are reading *Miranda* warnings" that meet constitutional standards, *Moll v. United States*, 413 F.2d 1233, 1238 (5th Cir. 1969),[2] Harris does

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

not challenge the sufficiency of these warnings, and thus, there is no reason to question their adequacy. Rather, Harris takes issue solely with the warnings given immediately preceding the taped interview on the ground that Officer Creelman failed to advise Harris of his right to counsel. A careful review of the record, however, indicates because the initial warnings given to Harris, both at the scene of the arrest and while he was in the holding cell, touched all of the bases required by *Miranda*, the fact the final warnings were somewhat incomplete does not affect the sufficiency of the warnings in their totality. In other words, it cannot be said that Harris, who was read his rights in full on at least two occasions, once only 15 minutes before participating in the taped interview, was not reasonably informed of his rights under *Miranda*. *See Prysock*, 101 S. Ct. at 2810.

Furthermore, despite Harris's argument the magistrate erroneously relied on a signed *Miranda* waiver form that did not exist in finding a valid waiver, the record shows the Government has carried its "heavy burden" of demonstrating waiver by showing (1) Harris received the *Miranda* warnings, the sufficiency of which he does not dispute; (2) he had the capacity to understand them and in fact understood them; and (3) he expressly waived his right to silence. Harris offered no evidence which would tend to indicate his statements during the taped interview were the product of intimidation or coercion. The record supports the conclusion

8

Harris was aware of his rights and comprehended the consequences of abandoning them. Most important, however, is Creelman's testimony indicating that when Harris was specifically asked whether he understood his rights, he responded affirmatively and indicated he was willing to cooperate with the authorities by making a statement. As such, the totality of the circumstances supports the conclusion Harris's waiver of his right against self-incrimination was voluntary, knowing, and intelligent and was not the product of coercion or incomprehension.

C.     *Booker*

Because Harris invoked *Apprendi* during his sentencing hearing, he is entitled to preserved-error review. *See United States v. Dowling*, 403 F.3d 1242, 1246 (11th Cir. 2005). Where there is a timely objection, we review the sentence de novo, but reverse only for harmful error. *See United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). We have clarified there are two types of *Booker* error: (1) Sixth Amendment, or constitutional, error based upon sentencing enhancements imposed under a mandatory Guidelines system, neither admitted by the defendant nor submitted to a jury and proven beyond a reasonable doubt; and (2) statutory error based upon sentencing under a mandatory Guidelines system. *United States v. Shelton*, 400 F.3d 1325, 1329–30 (11th Cir. 2005). We turn directly to statutory error.

9

*Booker* statutory error exists where the district court imposes a sentence under a mandatory Guidelines system. *Id.* at 1330–31. The district court sentenced Harris under a mandatory Guidelines system, thus statutory error exists. *See id.* "A non-constitutional error is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but a very slight effect. If one can say with fair assurance . . . that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." *United States v. Mathenia*, 409 F.3d 1289, 1292 (11th Cir. 2005) (internal quotations marks and brackets omitted). The Government has the burden of showing the error was harmless. *Id.*

Although the Government argues Harris suffered no harm, there is nothing in the record to suggest the district court would have imposed the same sentence had the Guidelines been applied in an advisory fashion. Therefore, we cannot "say with fair assurance that the sentence was not substantially swayed by the error." *See id.* The Government is unable to carry its burden of demonstrating a mandatory application of the Guidelines resulted in harmless error. *See id.*

## II. CONCLUSION

As to the denial of Harris's motion to suppress evidence, a review of the totality of the circumstances surrounding the traffic stop supports the conclusion the search of the compact disc binder was reasonable and did not offend the standard set forth in *Terry*. As to the denial of Harris's motion to suppress post-arrest statements, the record indicates Harris was properly advised of, and subsequently waived, his rights under *Miranda*. With respect to Harris's sentence, we vacate and remand for resentencing consistent with *Booker* because the district court's mandatory application of the Guidelines amounted to harmful error. We note the district court correctly calculated Harris's Guidelines range of 180 to 210 months' imprisonment. *See United States v. Crawford*, 407 F.3d 1174, 1178–79 (11th Cir. 2005) (stating after *Booker*, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate *correctly* the sentencing range prescribed by the Guidelines"). Thus, on remand the district court is required to sentence Harris according to *Booker*, considering the Guidelines advisory range of 180 to 210 months' imprisonment

and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)."

*Booker*, 125 S. Ct. at 757.[3]

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

---

[3] We do not mean to suggest by our holding that the district court must impose any particular sentence on remand. Rather, we merely hold the Government did not meet its burden of showing the *Booker* statutory error was harmless. We also do not attempt to decide now whether a particular sentence might be reasonable in this case.