[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10989
Non-Argument Calendar
_____

D.C. Docket No. 4:08-cr-00044-RLV-WEJ-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

REX ANDREW WHITLOCK,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 19, 2012)

Before CARNES, WILSON and FAY, Circuit Judges.

PER CURIAM:

Rex Whitlock appeals his conviction for conspiracy to possess with intent to

distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846.

On appeal, he argues that: (1) the district court erroneously denied his motion to suppress evidence because his traffic stop was unsupported by probable cause; and (2) he was unlawfully detained during the traffic stop. For the reasons set forth below, we affirm Whitlock's conviction.

## I.

On August 22, 2008, Chris Day, a Deputy with the Bartow County Sheriff's Office, initiated a traffic stop of a car that appeared to have illegal window tint and was following another car too closely. Tray Deandrea Galbreath was the driver, and Whitlock was his passenger. During the traffic stop, Deputy Day's K-9, Remi, performed an external sniff search of the car, and he alerted to the presence of narcotics. Shortly thereafter, Deputy Day searched the car and discovered cocaine.

A federal grand jury returned a two-count indictment, charging Whitlock and Galbreath with conspiracy to possess with intent to distribute cocaine, and aiding and abetting the possession of cocaine. Whitlock filed a motion to suppress evidence, arguing that Deputy Day initiated the traffic stop without a reasonable suspicion of criminal activity or probable cause, and that Whitlock's detention during the stop was illegal.

At the suppression hearing, Deputy Day testified to the circumstances surrounding the traffic stop. Deputy Day was working "criminal interdiction" on

I-75 in a marked patrol car, along with Remi and another officer, "Deputy Gifford." At approximately 3:55 p.m., Deputy Day initiated a traffic stop of a gold Pontiac Bonneville ("Bonneville") with a Tennessee license plate. Deputy Day was parked on the side of I-75 when he saw the Bonneville "slow[] noticeably down below the normal flow of traffic" and make several unnecessary lane changes. After noticing that the car also had illegal window tint, he pulled onto the highway, turned on his blue lights, and initiated the traffic stop.

When Deputy Day first saw the Bonneville, it was traveling in the middle lane of I-75, and the flow of traffic was approximately 75 miles-per-hour. The Bonneville was driving slower than the flow of traffic at approximately 50 to 55 miles-per-hour. After Deputy Day pulled out into traffic, the Bonneville moved one lane to the right, and Deputy Day was driving behind it. The Bonneville then changed lanes back to the original lane, and it was "less than one car length" behind another car. Deputy Day did not recall whether the other car was traveling with the flow of traffic, but when the Bonneville changed lanes, it was "practically right on the other car's bumper." If the other car's driver had hit the brakes, "there would have been a car accident." Once Deputy Day observed this lane change, he initiated the traffic stop immediately.

Deputy Day approached the Bonneville from the passenger side, and he

3

asked Galbreath, the driver, to exit the car to discuss the reasons for the traffic stop. Next, Deputy Day determined that the car's window tint tested at 18 percent, which is illegal in Georgia. As this time, Deputy Day planned to write a warning citation for both the illegal window tint and for following too closely, and he began writing it while speaking with Galbreath, but he did not complete it. While writing the citation, Deputy Day asked Galbreath for consent to search the Bonneville, but Galbreath refused consent.

At this time, Deputy Gifford exited the patrol car and asked Whitlock to step out of the Bonneville so Deputy Day could have Remi conduct an exterior sniff of the vehicle, which took approximately a minute. During the search, Remi showed several alerts, indicating that he detected the odor of narcotics. Remi then gave a "final indication" at the trunk by sitting down on the passenger side of the trunk area. Deputy Day then searched the Bonneville and discovered approximately eight kilograms of cocaine in the trunk. After discovering the drugs, Deputy Day arrested Galbreath and Whitlock. At some point after the arrests, the information from the license check was returned.

The government admitted the videotape of the traffic stop into evidence, which showed that Remi's sniff search began at 4:01 p.m., he sat down near the trunk at 4:02 p.m., and Whitlock was arrested at 4:04 p.m. Although the

4

conversations on the video were inaudible, the visual depiction of the traffic stop was consistent with Deputy Day's testimony. Only the police radio inside the patrol car was sometimes audible during the recording. The video did not show Deputy Day when he was writing the warning citation or when the citation was complete. Further, the video did not indicate when the results of the license check were returned.

The magistrate judge issued a report and recommendation that the district court deny the suppression motion. The magistrate credited Deputy Day's testimony and found that he reasonably believed that Galbreath had followed another car too closely and had illegal window tint, in violation of Ga. Code Ann. §§ 40-6-49 and 40-8-73.1. These traffic violations provided probable cause for the traffic stop. Further, at the time when Deputy Day stopped writing the traffic citation and conducted the exterior K-9 search, he was still waiting for the results of the license check, and as such, the traffic stop had not concluded prior to the sniff search. In fact, the results of the license check were not returned until after the defendants were arrested. Remi indicated to the presence of narcotics at seven minutes into the traffic stop, and "[s]even minutes is not an unreasonable amount of time for a traffic stop." As a passenger of the car that was involved in a lawful traffic stop, Whitlock was not unreasonably detained.

5

Further, the magistrate found that Deputy Day's request for consent to search the Bonneville and his decision to employ the K-9 were permissible and did not improperly prolong the traffic stop. Under the circumstances, Deputy Day's shift from writing a lawful traffic citation to conducting a drug investigation without reasonable suspicion was immaterial. Once Remi alerted on the Bonneville and gave his final indication at the car's trunk, the officers had probable cause to conduct a warrantless search, and Deputy Day was permitted to prolong the detention to conduct the search.

The district court adopted the magistrate's report and recommendation, and denied the suppression motion. Subsequently, Whitlock entered a conditional guilty plea to the conspiracy count, reserving his right to appeal the denial of his suppression motion, and in exchange, the government dismissed the remaining count. Whitlock received a 120-month sentence to be followed by 5 years of supervised release.

## II.

We review a district court's denial of a motion to suppress as a mixed question of law and fact. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). Rulings of law are reviewed *de novo*, while the district court's findings of fact are reviewed for clear error, in the light most favorable to the prevailing party

in the district court. *Id*. We afford considerable deference to the district court's credibility determinations because it is "in a better position than the reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). The version of events adopted by the district court must be accepted "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Id*. Also, great deference is given to the judgment of a trained law enforcement officer "on the scene." *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) (citation omitted).

The Fourth Amendment protects individuals from unreasonable searches and seizures. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008); U.S. Const. amend IV. When police stop a motor vehicle, even for a brief period, a Fourth Amendment "seizure" occurs. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810, 116 S.Ct. at 1772.

Under Georgia law, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Ga.

7

Code Ann. § 40-6-49.  Further, it is unlawful for any person to operate a motor vehicle,

> [w]hich has material and glazing applied or affixed to the rear windshield or the side or door windows, which material and glazing when so applied or affixed reduce light transmission through the windshield or window to less than 32 percent, plus or minus 3 percent.

Ga. Code Ann. § 40-8-73.1(b)(2).

The district court did not err by crediting Deputy Day's testimony or by finding that the traffic stop was legal because he had probable cause to believe that traffic violations had occurred.  Throughout his testimony, Deputy Day maintained that he initiated the traffic stop based on two Georgia traffic violations: following too closely and illegal window tint.  *See* Ga. Code Ann. §§ 40-6-49, 40-8-73.1(b)(2).  As to the first violation, Whitlock suggests that the Bonneville could not have been traveling slower than the flow of traffic while also following another car too closely.  At the suppression hearing, however, Deputy Day testified that the Bonneville was traveling noticeably slower than the flow of traffic, but that, when the Bonneville changed lanes, it was "practically right on [another] car's bumper."  Deputy Day never asserted that the Bonneville continued driving slower than the flow of traffic while also remaining too close to another car that was traveling at a faster speed.  Instead, he testified that, when he

8

observed the risk of a car accident, he immediately initiated the traffic stop. It is not "contrary to the laws of nature" that a car traveling slower than the flow of traffic could position itself very closely to another car just after changing lanes, and contrary to Whitlock's argument, these assertions are not mutually exclusive. *See Ramirez-Chilel*, 289 F.3d at 749.

Deputy Day's testimony regarding the illegal window tint violation was also not improbable or inconsistent. He could have noticed both the Bonneville's slow speed and window tint immediately, but still have waited to initiate the traffic stop until he observed the risk of a car accident after the Bonneville's lane change. Deputy Day's decision regarding when to initiate the traffic stop does not render improbable his testimony that he ultimately stopped the Bonneville for both violations. Further, Whitlock's argument, that the Bonneville's Tennessee license plate was the actual reason for the traffic stop, is unsupported by any evidence in the record. Other than referencing the license plate in his description of the Bonneville, Deputy Day provided no testimony to suggest that he stopped the car based on the license plate. Thus, Deputy Day's testimony regarding the traffic stop was not "contrary to the laws of nature" or so inconsistent or improbable that no reasonable factfinder could accept it, and as such, we defer to the district court's credibility determination. *See id.* In light of this deference, the court did

9

not err in determining that Deputy Day reasonably initiated the traffic stop based on his belief that the driver had committed two Georgia traffic violations. *See Whren*, 517 U.S. at 810, 116 S.Ct. at 1772.

### III.

Following a traffic stop, the officer's investigation "must be reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007) (quotation omitted). Also, "the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *Id.* (quotation omitted). During a traffic stop, an officer may "prolong the detention to investigate the driver's license and the vehicle registration, and may do so by requesting a computer check." *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (citation omitted).

Generally, when all computer background checks have been performed, the citation is written, and the police officer returns the driver's license, the traffic violation investigation is complete and the driver is free to go. *See id.* at 1106-07. An officer may prolong a traffic stop beyond its legitimate purpose only in the limited circumstances where there is a "reasonable and articulable suspicion illegal activity has occurred or is occurring" or if the driver consents. *United States v.*

10

*Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999).  A Fourth Amendment violation occurs when police conduct a dog sniff and uncover contraband while an individual is unlawfully detained, e.g., "during an unreasonably prolonged traffic stop."  *See Illinois v. Caballes*, 543 U.S. 405, 407-08, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (2005).  However, a dog sniff that does not unreasonably prolong the traffic stop is not a search subject to the Fourth Amendment, and based on this principle, the Supreme Court has "rejected the notion that the shift in purpose from a lawful traffic stop into a drug investigation was unlawful because it was not supported by any reasonable suspicion."  *Muehler v. Mena*, 544 U.S. 93, 101, 125 S. Ct. 1465, 1471, 161 L. Ed. 2d 299 (2005) (quotations omitted).

Here, the duration of the traffic stop was approximately seven minutes, beginning at 3:55 p.m., when Deputy Day stopped the Bonneville, and concluding at 4:02 p.m., when Remi alerted to the drugs.  Seven minutes is not an unreasonable duration for a traffic stop.  *See United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001) ("Fourteen minutes is not an unreasonable amount of time for a traffic stop. We have approved traffic stops of much longer duration").

Whitlock argues that the traffic stop had concluded before Remi alerted, and that Deputy Day unlawfully prolonged the stop for the purpose of conducting a drug sniff, in response to Galbreath's refusal to give consent for a search of the

11

car.  However, Deputy Day had not "effectuate[d] the purpose of the stop" when Remi alerted because Deputy Day had not yet completed the traffic citation and the results of the license and registration check were still pending.  *Ramirez*, 476 F.3d at 1236.  Whitlock contends that the video evidence established that the license check was complete prior to the sniff search.  However, the video did not contradict Deputy Day's testimony that he received the results of the license check after arresting Whitlock.  To the contrary, Deputy Day's statements during the relevant portion of the video were inaudible, and the video did not show when he received the results of the license check.  Further, because the traffic stop was legal, Remi's sniff search did not implicate the Fourth Amendment, and a reasonable suspicion was not required for the search.  *See Muehler*, 544 U.S. at 101, 125 S. Ct. at 1471.

For the foregoing reasons, we affirm Whitlock's conviction.

**AFFIRMED.**