**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tommy Lee WILLIAMS, Leonard
Williams, Defendants–Appellants.**

No. 88–3716.

United States Court of Appeals,
Eleventh Circuit.

July 12, 1989.

Wm. J. Sheppard, Elizabeth L. White, Jacksonville, Fla., for Tommy Lee Williams.

Lee Fugate, Clearwater, Fla., for Leonard Williams.

Ronald T. Henry, Asst. U.S. Atty., Jacksonville, Fla., Joseph C. Wyderko, U.S. Dept. of Justice, Criminal Division, Washington, D.C., for plaintiff-appellee.

Before HILL and EDMONDSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

**1522**

HILL, Circuit Judge:

A federal jury convicted Tommy Lee and Leonard Williams for their participation in a conspiracy to distribute "crack" cocaine in Jacksonville, Florida. In this appeal, we consider, *inter alia*, whether the stop of appellants' automobile complied with the principles announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and whether the statute under which the district court sentenced the appellants, 21 U.S.C.A. § 841(b)(1)(A)(iii), violates due process.

I

In November 1987, Detective Robert Walsh and other members of the Duval County Sheriff's office in Jacksonville, Florida, placed a court-ordered wiretap on the telephone of Henry Alan Mann, a suspected drug trafficker. At 4:48 p.m. on November 13, the detectives intercepted an incoming call from a woman identifying herself as "Rabbit." Rabbit asked one of Mann's associates, "You want to move something for me [?]" From these and other words, the detectives determined that Rabbit intended to distribute narcotics to Mann and that Rabbit's true identity was Essie Williams, the appellants' sister. She had been stopped and identified a week earlier by a Sheriff's Department officer after leaving the location of another suspected drug dealer while carrying a large amount of money. Expecting another drug transaction, the detectives began a surveillance of an apartment from where they believed Essie Williams had called Henry Mann.

At midnight on November 13, the detectives observed two cars arrive at the apartment complex, a Nissan Sentra and a Blazer, from which one woman and three men emerged. Walsh had never seen the four persons before, but he believed that the woman was Essie Williams and that the men were her three brothers, appellant Tommy Lee Williams, appellant Leonard Williams and Lee James Williams. Walsh based this belief on information and physical descriptions concerning the Williams family which he and other members of his department had gathered during a two to three month investigation. Specifically, the Sheriff's Department had previously investigated Essie Williams in Jacksonville. Also, law enforcement sources in Ft. Lauderdale, Florida, had informed the detectives that the three Williams brothers were known as major suppliers of cocaine in South Florida who had recently begun to make distributions in northern Florida. This information was corroborated by confidential informants in Jacksonville who told detectives that appellant Tommy Lee Williams was supplying crack cocaine to Henry Mann, the target of the wiretap. Thus, when Walsh observed the three men who matched the descriptions of the Williams brothers, he suspected that they were in town to help Essie Williams distribute cocaine.

The detectives' surveillance continued, and, at 11:30 a.m. the next day, they observed the Williams brothers leave the apartment and get into the Nissan Sentra. One of them carried a plastic drawstring bag of the type used by athletic stores for customer purchases. The detectives, who had an unmarked car, followed the Sentra. The Sentra exited the apartment complex, turned onto St. Augustine Road, drove at a very high rate of speed, and then suddenly made a U-turn in the middle of the road and returned to the complex. The Sentra circled the apartment complex without stopping. It then came back out onto St. Augustine Road and quickly sped away. Based on his experience, Detective Walsh believed that the Sentra was being driven in a type of counter-surveillance pattern to determine whether someone was following the car. As Walsh later testified, "[i]t is ... a pattern which I have seen numerous times when an individual ... is hiding something or wants to see if someone is following them...." Walsh also believed that the erratic driving constituted a traffic violation. However, he did not stop the Sentra because his unmarked car lacked a blue light. Instead, Walsh contacted the dispatch operator to have a uniformed officer stop the Sentra.

Officer Bruce Wilde of the Duval County Sheriff's Department responded to the dispatcher's call. Detective Walsh told Officer Wilde to stop the Sentra and to identify the driver. Walsh also stated the stop was part of a drug investigation but did not give the officer any more specific information. After being directed to the Sentra's location, Wilde began to follow it. He noticed that neither the driver nor the front-seat passenger were wearing seat belts, which he believed to be a violation of Florida law.[1] Because of Walsh's instructions to stop the car and the seat belt violation, Officer Wilde turned on his blue light, and the Sentra stopped in the right traffic lane. Officer Wilde exited his automobile, approached the Sentra and stood on the driver's side of the car. He asked the driver, appellant Tommy Lee Williams, for his driver's license. Tommy Lee Williams then looked around, put the car in gear and departed, leaving officer Wilde standing in the middle of road.

Officer Wilde returned to his vehicle, activated his siren and chased the Sentra for four blocks. Another marked police automobile and Detective Walsh's automobile also pursued the appellants. The Sentra traveled the wrong way on several one-way streets before it stopped. As the car slowed down, the front seat passenger, appellant Leonard Williams, threw the athletic bag out the window, and the bag became caught on a tree limb. Once the car stopped, the officers arrested the three Williams brothers and retrieved the athletic bag, which contained 850 grams of crack cocaine. Thereafter, Walsh returned to the apartment which had been under surveillance. There, Walsh met and spoke with Essie Williams who confirmed that she was traveling with her three brothers and that she was also known as Rabbit.

A two count federal indictment charged Tommy Lee and Leonard Williams with conspiracy to possess with intent to distribute in excess of 50 grams of cocaine base, also known as crack, in violation of 21 U.S.C.A. § 846 (West Supp.1989) (Count 1), and with possession with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C.A. § 841(a)(1) (West 1981) (Count 2). Prior to trial, the appellants moved to suppress the cocaine, contending that the initial stop of their automobile had violated the Fourth Amendment. After a hearing, the magistrate recommended that the motions be denied and the district court agreed. The jury subsequently convicted the appellants on both counts, and the district court sentenced the appellants pursuant to the 21 U.S.C.A. § 841(b)(1)(A)(iii) (West Supp.1989), which defines the penalties for narcotics offenses involving 50 grams or more of cocaine base.

On appeal, appellants challenge the district court's (1) denial of their motion to suppress, (2) its admission of Essie Williams' tape-recorded conversation and certain other evidence during trial, (3) the district court's denial of their requested jury instructions, and (4) their sentences pursuant to section 841(b)(1)(A)(iii). In this opinion, we discuss some, but not all, of appellants' claims and arguments. As to issues not discussed herein, we find appellants' contentions to be without merit.

## II

The appellants contend that the initial stop of their automobile did not comply with the Fourth Amendment since the detectives lacked reasonable suspicion. Our analysis is governed by the principles of *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), under which the police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking.

---

1. Fla.Stat.Ann. § 316.614 (West Supp.1989) provides in relevant part:

   (4) It is unlawful for any person:

   . . . . .

   (b) To operate a motor vehicle in this state unless the person is restrained by a safety belt.

   . . . . .

   (9) Enforcement of this section by state or local law enforcement agencies shall be accomplished only as a secondary action when a driver of a motor vehicle has been detained for a suspected violation of another section of this chapter. . . .

The *Terry* rationale also permits police officers to stop a moving automobile based on a reasonable suspicion that its occupants are violating the law. *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 678, 83 L.Ed.2d 604 (1985); *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). Reasonable suspicion is determined from the totality of the circumstances, *United States v. Sokolow,* —— U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), and from the collective knowledge of the officers involved in the stop. *United States v. Cotton,* 721 F.2d 350, 352 (11th Cir.1983), *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). Although this standard is considerably less demanding than proof of wrongdoing by a preponderance of the evidence and less than probable cause, the Fourth Amendment nevertheless requires that the police articulate facts which provide some minimal, objective justification for the stop. *Sokolow,* 109 U.S. at 1585. Such facts may be derived from "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

Here, the wiretap, police and informants' reports, and the detectives' observations yielded enough facts to support a reasonable suspicion that appellants were trafficking in cocaine at the time of the initial stop. The intercepted telephone conversation evidenced that a woman believed to be Essie Williams, who had been detained a week earlier in connection with a narcotics transaction, wanted to distribute cocaine to Henry Mann, also a suspected drug dealer.

That conversation led to the surveillance of an apartment where, several hours later, the detectives observed Essie Williams arrive with three men fitting the descriptions of her brothers, appellant Tommy Lee Williams, appellant Leonard Williams and Lee James Williams. The detectives knew that Ft. Lauderdale law enforcement sources suspected the brothers of supplying large quantities of cocaine in South Florida. More importantly, they knew that Tommy Lee Williams was allegedly supplying crack cocaine to Henry Mann. Thus, with the coincidence of Essie Williams' call to Henry Mann and the arrival in Jacksonville of Tommy Lee Williams, Mann's apparent source for crack, the detectives logically suspected that the Williams siblings intended to distribute cocaine jointly. Moreover, after observing the unusual manner in which the Sentra exited the apartment complex, which Detective Walsh interpreted as an evasive tactic intended to detect police surveillance, he reasonably surmised that the appellants were in the process of distributing their crack cocaine. Also, Walsh believed that appellants had violated the traffic laws. Under these circumstances, Officer Wilde's investigative stop complied with the Fourth Amendment. The district court correctly denied appellants' motion to suppress.[2]

■ Next, appellants complain that the district court failed to instruct the jury on certain lesser included offenses. The indictment charged the appellants with the offenses of violating, and conspiring to violate, 21 U.S.C.A. § 841(a)(1), which prohibits individuals from distributing a "controlled substance."[3] The indictment also alleged that the controlled substance involved here was 850 grams of cocaine base. As proof, a government expert testified

---

**2.** Having found that reasonable suspicion justified the initial stop, we need not reach appellants' contention that the stop was pretextual. The issue of whether a stop for a traffic violation—in this case the seat belt offense—is ever a pretext for investigating drug activity arises only when the police lack reasonable suspicion. *See United States v. Smith,* 799 F.2d 704, 707–708 (11th Cir.1986) (trooper lacked reasonable suspicion to stop car); *United States v. Miller,* 821 F.2d 546, 549 (11th Cir.1987) (same). Also, we need not address whether appellants' flight from

the scene of the initial stop, which involved driving the wrong way down one way streets, constituted new and distinct offenses, which, in themselves, justified the second stop of the Sentra and the officers' recovery of the cocaine.

**3.** 21 U.S.C.A. § 841(a)(1) provides that "... it shall be unlawful for any person knowingly or intentionally ... to ... possess with intent to ... distribute ... a controlled substance...."

that the substance found in the appellants' bag was "cocaine as the free base form," also known as crack cocaine. He distinguished crack from mere "cocaine", which contains hydrochloric acid and is commonly presented in the media as a powder. Before the case went to the jury, however, appellants requested instructions that they could be found guilty of the lesser included offense of possessing and intending to distribute cocaine, as opposed to cocaine base. The district judge denied this request, and appellants contend that he erred. Appellants' claim is founded on the fact that 21 U.S.C.A. § 841(b)(1)(A)(iii) authorizes a minimum ten-year prison term for distributing 50 grams or more of cocaine base, whereas another provision in section 841(b) requires 5 *kilograms* of cocaine to trigger the same minimum ten year sentence. *See* 21 U.S.C.A. § 841(b)(1)(A)(ii)(II). As a result, possession of 850 grams of cocaine base carries a heavier penalty than possession of a like quantity of cocaine. Thus, appellants contend that possession of cocaine must be a lesser included offense and that the jury, which may have disbelieved the expert's testimony, should have been so instructed. We disagree.

A violation of section 841(a)(1) occurs when the government proves beyond a reasonable doubt that a defendant possessed and intended to distribute a "controlled substance", regardless of whether that substance is cocaine or cocaine base.[4] The nature and quantity of the controlled substance are relevant only to sentencing and do not constitute elements of a lesser included offense. *See United States v. Smith*, 840 F.2d 886, 888 (11th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988) (quantity of controlled substance in defendant's possession pertinent only to sentencing); *United States v. Simmons*, 725 F.2d 641, 643–644 (11th Cir.), *cert. denied,* 469 U.S. 827, 105 S.Ct. 108, 83 L.Ed.2d 52 (1984) (same). Therefore, the district court correctly denied appellants' proposed lesser included offense instructions.[5]

■ Finally, appellants contend that their sentences under section 841(b)(1)(A)(iii) (which penalizes offenses involving cocaine base) are invalid because of the statute's failure to define the meaning of cocaine base or otherwise differentiate it from other types of cocaine. This failure, the appellants urge, renders the statute vague, in violation of due process. We think not. When dealing with a vocabulary somewhat more arcane than *Guffy's Reader*, Congress might well consider using more specific definitions. Here, however, we agree with the District of Columbia Circuit and the Second Circuit that those concerned with the relevant legislation understood cocaine base to refer to crack and intended to enhance penalties for crack dealers. *See United States v. Brown*, 859 F.2d 974, 976 (D.C.Cir.1988); *United States v. Collado–Gomez*, 834 F.2d 280, 281 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). Because the evidence supported a verdict that appellants intended to distribute cocaine base, the district court correctly sentenced the appellants.

### III

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**4.** Appellants do not dispute that cocaine base is a controlled substance within the meaning of Title 21. *See* 21 U.S.C.A. § 812(c), Schedule II(a)(4) (West 1981 and Supp.1989) (defining mixtures of cocaine as controlled substances).

**5.** We do not find error in the denial of other requested jury instructions.