[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13268
Non-Argument Calendar

_____

D.C. Docket No. 03-14065-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTOINE FRANCIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 14, 2005)**

Before BIRCH, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Antoine Francis, through counsel, appeals both the district court's

order denying his motion to suppress and his 262-month sentence for cocaine base

distribution, in violation of 21 U.S.C. § 841(a)(1). On appeal, Francis argues that the district court improperly denied his motion to suppress evidence seized during a traffic stop because (1) the police officer's questioning of Francis, as a passenger in a lawfully stopped vehicle, regarding his possession of weapons and contraband, broadened the scope of the initial detention and resulted in an unlawful seizure in violation of the Fourth Amendment; and (2) he did not voluntarily consent to a search of his person but rather acquiesced to a "show of official authority." Francis also claims that, in light of *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the district court plainly erred by enhancing his sentence, pursuant to a mandatory application of the Sentencing Guidelines and based on both his status as a career offender and various drug quantities, neither of which were charged in the indictment.

## I. Motion to Suppress

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact under the clearly erroneous standard and the district court's application of law to those facts *de novo*." *United States v. Desir*, 257 F.3d 1233, 1235-36 (11th Cir. 2001).

**A.      Unlawful Detention**

The Fourth Amendment protects individuals from unreasonable searches and seizures.  A traffic stop is a seizure within the meaning of the Fourth Amendment.  *Deleware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660 (1979).   Nevertheless, because a routine traffic stop is a limited form of seizure, it is analogous to an investigative detention, and we have therefore held that a traffic stop will be governed by the standard set forth in *Terry v. Ohio*,  392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).  *United States. v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999).  In *Terry*, the Supreme Court clarified that a person is seized "whenever a police officer accosts an individual and restrains his freedom to walk away."  392 U.S. at 16, 88 S. Ct. at 1877.  "[T]he police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking."  *United States v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989).

"[T]he reasonableness of such seizures depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."  *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 , 95 S. Ct. 2574, 2579, 45 L. Ed. 2d 607 (1975).  The Fourth Amendment nevertheless requires that a  police officer "be able to point to specific and

articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. When determining whether reasonable suspicion exists, the court must review the "totality of the circumstances" of each case to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002). We have held that reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence, or even the implicit requirement of probable cause that a fair probability that evidence of a crime will be found." *Pruitt*, 174 F.3d. at 1219 (citations omitted).

The Supreme Court, recognizing that law enforcement officers face an "inordinate risk" of assault during traffic stops, has held that once a motor vehicle has been lawfully stopped for a traffic violation, a police officer may order the driver to get out of the vehicle without violating the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11, 98 S. Ct. 330, 333, 54 L. Ed. 2d 331 (1977). Importantly, the Supreme Court has extended the rule announced in *Mimms* and held that an officer making a traffic stop may order passengers to exit the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 413-15, 117 S. Ct. 882, 885-86, 137 L. Ed. 2d 41 (1997). Even so, we have observed that "an officer's actions

4

during a traffic stop must be reasonably related in scope to the circumstances which justified the interference in the first place," and that "the duration of the traffic stop must be limited to the time necessary to effectuate the purpose." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (quotation and emphasis omitted). In other words, "the traffic stop may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *Id.* (quotation omitted). "[O]nly unrelated questions which unreasonably prolong the detention are unlawful; detention, not questioning, is the evil at which *Terry's* prohibition is aimed. Questions which do not extend the duration of the initial seizure do not exceed the scope of an otherwise constitutional traffic stop." *Purcell*, 236 at 1280 (citation, quotation, and alteration omitted). In addition, "[i]t is well established that officers conducting a traffic stop may take such steps as are reasonably necessary to protect their personal safety." *Id.* at 1277 (quotation omitted).

After reviewing the record, we conclude that the district court properly denied Francis's motion to suppress because the officer's questioning of Francis did not unreasonably extend the duration of the traffic stop and the questions posed were reasonably necessary to protect the officer's safety. Francis complains that the officer asked him not only about weapons but also about narcotics.

5

Nevertheless, the record demonstrates that the entire traffic stop, from the time the officer stopped the car to the time he discovered the drugs at issue in Francis's waistband, took approximately five minutes. In addition, the totality of the circumstances surrounding the detention show that the officer's questions were necessary to protect his safety.

## B.    Validity of Consent

Francis also claims that he did not voluntarily consent to a search of his person, but rather acquiesced to a "show of official authority."

In the absence of probable cause or reasonable suspicion, law enforcement officers "may nonetheless search an individual without a warrant, so long as they first obtain the voluntary consent of the individual in question." *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

"Searches conducted by means of consent are valid, so long as the consent is voluntary." *United States v. Kapperman*, 764 F.2d 786, 793 (11th Cir. 1985). "The determination as to whether a suspect's consent is voluntary is not susceptible to neat talismanic definitions; rather, the inquiry must be conducted on a case-by-case analysis." *Blake*, 888 F.2d at 798. Generally, "[i]n order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." *United States v. Garcia*, 890 F.2d 355, 360 (11th

Cir. 1989).  In determining whether consent was freely given, we will "scrutinize

the facts  and strike a balance between [a suspect's] right to be free from coercive

conduct and the legitimate need of the government to conduct lawful searches.  *Id.*

"Relevant factors in determining voluntariness, none of which is dispositive,

include" (1) "the voluntariness of the defendant's custodial status," (2) "the

presence of coercive police procedure," (3) "the extent and level of the

defendant's cooperation with police," (4) "the defendant's awareness of his right

to refuse to consent to the search," (5) "the defendant's education and

intelligence," and (6) "the defendant's belief that no incriminating evidence will

be found."  *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984).

After reviewing the record, we conclude that Francis voluntarily consented

to answer the officer's questions.  The record established that the officer never

touched or restrained Francis in any way, and in fact, did not even frisk Francis or

unholster his weapon until after Francis had already been placed under arrest.

Most important, the record shows that Francis voluntarily removed his shoes and

loosened his waistband without being specifically directed to do so.

## II.  *Booker*

Francis argues, for the first time, that his sentence should be vacated in light

of *Booker*.  Francis contends that the district court violated his rights under the

Fifth and Sixth Amendments by increasing his offense level by relying on facts that were neither set forth in the indictment nor admitted by his plea. He also argues that the district court erred by applying the Guidelines in a mandatory fashion.

Because Francis failed to make any constitutional objection to the probation officer's or the court's sentencing calculations, our review is limited to a review for plain error. *United States v. Rodriquez*, 398 F.3d 1291, 1298 (11th Cir. 2005), *petition for cert. filed*, (No. 04-1148) (U.S. Feb. 23, 2005). In order for us to correct plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. *Id.* "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted).

In order to decide the *Booker* issues Francis presents, we must review the applicable Supreme Court precedent pertaining to sentence enhancements based on prior convictions and defendant admissions. In *Almendarez-Torres v. United States*, the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of

8

enhancing a sentence. 523 U.S. 224, 243-44, 118 S. Ct. 1219, 1230-31, 140 L. Ed. 2d 350 (1998). In *Apprendi v. New Jersey*, the Supreme Court declined to revisit *Almendarez-Torres*, but held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000). In *Blakely v. Washington*, the Supreme Court applied the rule announced in *Apprendi* to the State of Washington's Sentencing Reform Act and reversed an upward departure based solely on judicial fact-finding. 542 U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The Court noted that the relevant "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at ____, 124 S. Ct. at 2534-38 (emphasis omitted).

In *United States v. Marseille*, 377 F.3d 1249, 1257 (11th Cir.), *cert. denied*, 125 S. Ct. 637 (2004), we refused to interpret the Supreme Court's rationale in *Apprendi* as overruling the prior Supreme Court holding in *Almendarez-Torres*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), that the government "need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions

9

for purposes of enhancing a sentence." We further concluded that *Blakely* "does not take such fact-finding out of the hands of the courts." *Id*. at 1257-58 n.14; *see also United States v. Orduno-Mireles*, 405 F.3d 960, 963 (11th Cir. 2005) (holding that *Almendarez-Torres* remains the law after *Blakely* and *Booker*).

Recently, in *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738, 749, 160 L. Ed. 2d 621(2005), the Supreme Court held that there was no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in *Blakely*. In *Booker*, the Supreme Court concluded that its holding in *Blakely* applied to the Federal Sentencing Guidelines, and it explicitly reaffirmed its holding in *Apprendi*: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at ___, 125 S. Ct. at 756. In addition, because the mandatory nature of the Guidelines implicated the Sixth Amendment right to a jury trial, the Supreme Court made the Guidelines effectively advisory. 543 U.S. at ___, *Id.* at 757.

Francis first argues that the district court plainly erred, in light of *Booker*, when it (1) found that he was responsible for an amount of drugs that exceeded the 5-gram drug quantity charged in the indictment, thus qualifying him for a base

10

offense level of 30 pursuant to U.S.S.G. § 2D1.1(c)(5), and (2) found that he was a career offender, thus qualifying him for a 7 level offense enhancement pursuant to U.S.S.G. § 4B1.1(a). These contentions, however, are without merit. As to drug quantity, because Francis did not challenge the accuracy of the relevant facts contained in the PSI or the government's recitation of facts at the plea colloquy, he admitted the drug quantities used to enhance his sentence. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005). As to Francis's classification as a career offender pursuant to U.S.S.G. § 4B1.1(a), we have held that the government need not allege in the indictment or prove beyond a reasonable doubt that a defendant has prior convictions in order for a district court to use those prior convictions for purposes of enhancing a sentence. *Orduno-Mireles*, 405 F.3d at 962-63. Accordingly, there is no Sixth Amendment violation under *Booker* in this case.

In addition, Francis is incorrect when he argues that he is entitled to be re-sentenced because the district court committed plain error by imposing his sentence pursuant to a mandatory application of the Sentencing Guidelines. We have held that the district court plainly errs by imposing a sentence under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement. *See Shelton*, 400 F.3d at 1330-31. Nevertheless, Francis is unable

11

to satisfy the third prong of the plain error test. Francis does not show, nor does the record reveal, any statements from the district court indicating that Francis would have received a lesser sentence under an advisory application of the Guidelines. Although Francis suggests that the district court's decision to sentence him at the bottom of the Guidelines' range satisfies his burden under the third prong of plain-error review, this fact is insufficient to support his claim. *See United States v. Fields*, No. 04-12486, manuscript op. at 8-10 (11th Cir. May 16, 2005) (holding that under plain-error review the fact that the defendant was sentenced to the bottom of the mandatory guideline range, without more, is insufficient to satisfy the third prong's requirement that the defendant show a reasonable probability of a lesser sentence under an advisory guideline system).

## III. Conclusion

For the foregoing reasons, we affirm Francis's convictions and sentences.

**AFFIRMED.**