[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 11, 2005
THOMAS K. KAHN
CLERK

No. 04-16372
Non-Argument Calendar

_____

D. C. Docket No. 04-00212-CR-B-W

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

D'ANDRE OSCAR RAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 11, 2005)**

Before TJOFLAT, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

D'Andre Oscar Ray was convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and sentenced to 37 months' imprisonment. Ray appeals the district court's denial of his motion to suppress on Fourth Amendment grounds, arguing the search of his person was unreasonable. Specifically, Ray argues the police officers had no cause to stop him, and the rationale articulated by the police officers was pretextual. Ray claims a reasonable officer would not have made the stop under the same circumstances, and argues "common sense" dictates that the provided reasons were not the "real reason[s] that Ray was stopped." We affirm the denial of his motion to suppress.

## I. BACKGROUND

Ray was charged in a one-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress the fruits of the search of his person and all statements made during the search, pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). The Government argued the officers who conducted the search had a reasonable, articulable suspicion that criminal activity was afoot.

At the suppression hearing, Officer Randy Baygents testified to the following. Officer Baygents was a police officer with the Tuscaloosa Police Department. He and Officer Chris Miller came into contact with Ray on

2

October 9, 2003, at 8:00 p.m. at the 2000 block of 25th Avenue in Tuscaloosa, Alabama. Ray was walking in the street with two other individuals, who continued walking in the officers' lane of traffic and would not move out of the roadway. There was no walkway or a sidewalk on either side of the street for pedestrians to walk, and Officer Baygents did not believe there was any street lighting. Officer Baygents stated that Ray and the other two individuals were violating a disorderly conduct statute in the State of Alabama because they were walking on the wrong side of the road.[1] The officers stopped the patrol car and got out to speak to Ray, because Ray was in Officer Baygents' lane of traffic, he was "very familiar with Mr. Ray," and there had been a robbery in the area a week before and the suspect met the same general description as Ray. Officer Baygents stated he had known Ray based on prior contacts with Ray and his brother for juvenile offenses, resisting arrest, and disorderly conduct. Officer Baygents stated he did not mention the robbery in his arrest report when he arrested Ray. The robbery suspect was a white male, about 6 feet tall, weighing 200 pounds, while Ray was a black male with a "very light complexion."

---

[1] Under Alabama law, "[a] person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (5) Obstructs vehicular or pedestrian traffic." Ala. Code § 13A-11-7 (1975).

Officer Baygents testified he and Officer Miller were very familiar with the individuals and asked them if they had any weapons. Officer Miller asked Ray if he had any weapons and Ray stated "these ain't my pants, these are my cousin's pants." The officers did a pat down for weapons for their safety after Ray made the statement. Officer Miller performed the pat down and found a firearm on Ray.

Officer Miller testified as follows. When he and Officer Baygents approached Ray and the other two individuals, none of them ran or attempted to evade the officers. Officer Miller asked Ray if he had any weapons "as [he] was about to pat him down," "[k]ind of simultaneous[]" to the pat down, and Ray stated "these ain't my pants, they're my cousin's pants." When asked to clarify when Ray made the suspicious statement, before or after the pat down, Officer Miller testified "[i]t was before, but it was as I was patting him down."

The district court denied Ray's motion to suppress, summarizing the following facts:

> One, at least one officer, Officer Baygents, was familiar with the defendant from prior contacts relating to criminal activity or criminal charges.
>
> Two, a week before the stop there had been a burglary about a block away from the location of Mr. Ray and his companions. The burglar was described as a white male. Although Mr. Ray is an African-American, he is of very light skin color.

4

Three, the area where the defendant was walking was essentially unlit.

Four, the defendant and his companions failed to move out of the roadway when the patrol car approached and, therefore, the defendant and his companions were in violation of an Alabama statute prohibiting obstruction of vehicular traffic.

Five, the suspicious conduct of the defendant when the officers asked whether anyone had any weapons, the defendant stated that he was wearing his cousin's pants.

The district court found, based on these facts, and in light of the totality of the circumstances, there was a reasonable suspicion Ray "was engaged in or about to engage in criminal activity, possibly including burglary." The court found that since the officers had reasonable suspicion that Ray was engaged in illegal activity and was armed with a concealed weapon, the officers were justified in conducting the limited search for weapons. The court found Ray's comment that he was wearing his cousin's pants a "very suspicious comment," which "would be something that a person would say if they knew there was something illegal in the pants." The district court found Ray's statement, combined with Officer Baygents's prior knowledge of Ray's criminal activity, "warranted a patdown for weapons to ensure the officer's safety."

Ray entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. In the factual basis for the plea agreement, Ray

5

admitted he made the statement about his pants before the officer patted him down. Ray was sentenced to 37 months' imprisonment and 3 years' supervised release.

## II. DISCUSSION

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). On a motion to suppress evidence, we defer to the district court's factual findings unless clearly erroneous, but review de novo the district court's application of law to the facts. *United States v. Garcia*, 890 F.2d 355, 359 (11th Cir. 1989). Importantly, the facts are construed "in the light most favorable to the prevailing party." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000). "The individual challenging the search has the burdens of proof and persuasion." *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).

"The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures by law enforcement authorities of the United States government." *Garcia*, 890 F.2d at 360. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *per se* unreasonable . . . subject

6

only to a few specifically established and well-delineated exceptions." *Id.* (quotations omitted).

The police may stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity, even though probable cause is lacking. *United States v. Williams*, 876 F.2d 1521, 1523 (11th Cir. 1989). In *Terry v. Ohio*, the Supreme Court held:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

392 U.S. 1, 30–31, 88 S. Ct. 1868, 1884–85 (1968). To justify an investigatory detention (*Terry* stop), the police officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S. Ct. at 1880. "[R]easonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S. Ct. 1581, 1585,

7

(1989) (quotation omitted).  Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence" and less than probable cause, which is "a fair probability that contraband or evidence of a crime will be found." *Id.* (citation and quotation omitted).  The reasonable suspicion must be "more than an inchoate and unparticularized suspicion or hunch." *Id.* (quotations omitted).

The Fourth Amendment nevertheless requires the police officer to "articulate facts which provide some minimal, objective justification for the stop." *Williams*, 876 F.2d at 1524.  When determining whether reasonable suspicion exists, courts must review the "totality of the circumstances" of each case to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing.  *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002).  The rule is not concerned with "hard certainties, but with probabilities" and, thus, law enforcement officials may rely on "common sense conclusions." *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981).  Investigatory stops can be "invalid as pretextual unless a reasonable officer would have made the seizure in the absence of illegitimate motivation." *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990) (quotation omitted).

"[P]olice may take reasonable action, based upon the circumstances, to protect themselves during investigative detentions." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989). Once an officer has legitimately stopped an individual, the officer can frisk the individual, so long as "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883.

The first issue is whether the initial stop was supported by reasonable suspicion. *Id.* at 21, 88 S. Ct. at 1880. Because Ray was violating a local statute by walking in the street when the police officers stopped him, the initial stop complied with the Fourth Amendment. *See Williams*, 876 F.2d at 1524.

The second issue concerns whether it was proper for the officers to frisk Ray. *See Terry*, 392 U.S. at 30–31, 88 S. Ct. at 1884–85. The facts undisputably show the officers approached Ray while Ray and his companions were blocking traffic, the officers were familiar with Ray from prior criminal activity, there had been a burglary a week before the stop, and the area where Ray was walking was essentially unlit. When asked whether he was carrying a weapon, Ray also made the suspicious statement, "these ain't my pants, these are my cousin's pants" before the pat down, which created a reasonable belief Ray may have been carrying a weapon on his person. Construing the facts in the light most favorable

9

to the Government, we find no error by the district court in applying the law to the facts.

In addition, Ray bears the burden of proof and persuasion, and he fails to prove why the investigatory stop was pretextual. He does not provide an explanation for why a reasonable officer would not have made the seizure based on the surrounding circumstances.

### III.  CONCLUSION

The *Terry* stop and frisk of Ray complied with the Fourth Amendment, and we find no pretext on the part of the police officers. Accordingly, we affirm the district court.

**AFFIRMED.**