[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16457
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cr-00102-SPC-CM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CORDELL FELIX,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 8, 2017)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Following a bench trial on stipulated facts, Defendant Cordell Felix was convicted of possession of a firearm by a convicted felon and sentenced to 180 months' imprisonment.  He now appeals, arguing that the district court erred by denying his motion to suppress evidence found during a *Terry*[1] stop.  He also challenges his sentence on various grounds.  After careful review, we affirm.

## I.    BACKGROUND

### A.    Facts

At approximately 12:30 AM, on June 20, 2015, Officer Nicholas Ursitti of the Fort Myers Police Department responded to a dispatch call regarding a robbery that had occurred on Palm Beach Boulevard.[2]  Officer Ursitti was familiar with that neighborhood because robberies frequently occur there and the suspects often flee into the surrounding neighborhoods.  The dispatch call identified the robbery suspects as two black males who appeared to be young or in their twenties, and who were last seen wearing black shirts and headed south toward Redbone's Bar and Grill.

While en route to Redbone's, Officer Ursitti observed an individual, later identified as Defendant, who matched the description of the robbery suspects.

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

[2] The facts are taken from the testimony and evidence presented at the suppression hearing, viewed in the light most favorable to the prevailing party, which here is the Government.  *See United States v. Bautista-Silva*, 567 F.3d 1266, 1271 (11th Cir. 2009).

Specifically, he was a black male wearing a black shirt and black pants. Officer Ursitti pulled his patrol car in front of Defendant, exited his vehicle, and asked Defendant to come speak to him about the incident that had occurred on Palm Beach Boulevard. Soon after providing his ID, which showed that he resided in a neighborhood located 20 minutes away, Defendant made a phone call and began avoiding Officer Ursitti's questions. Defendant then dropped to his knees and hunched over appearing to conceal something.

Footage from Officer Ursitti's body camera video showed Defendant squatting on the ground and talking on the phone with someone he was referring to as his mother. Officer Ursitti repeatedly told Defendant that he needed to pat him down for firearms and then Defendant could go on his way. Defendant emptied his pockets without being instructed to do so. After Defendant refused to comply with Officer Ursitti's instruction to lift his shirt, Officer Ursitti and other officers who had arrived at the scene restrained Defendant and found a firearm in his front waistband. Officers identified Defendant as a convicted felon and placed him under arrest.[3]

---

[3] At a subsequent showup, the robbery victim did not identify Defendant as the perpetrator.

### B.    Procedural History

A federal grand jury subsequently charged Defendant with (1) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and (2) possession of cocaine, in violation of 21 U.S.C. § 844(a).

Defendant moved to suppress his statements and the evidence (including the gun) seized from his person during the stop.  He argued that Officer Ursitti did not have reasonable suspicion to stop him.  At the suppression hearing, Officer Ursitti testified about the details of the stop.  Defendant called a criminal investigator who testified that Defendant was stopped by Officer Ursitti approximately one-half of a mile away from the location of the alleged robbery.

The district court denied the suppression motion.  Specifically, the district court determined that Officer Ursitti had reasonable suspicion to stop Defendant because Defendant matched the description of the robbery suspects.  Moreover, Defendant began acting nervously and dropped to his knees when Officer Ursitti approached him.  Consequently, the district court determined that Officer Ursitti did not violate Defendant's Fourth Amendment rights.

Defendant proceeded to a bench trial based on stipulated facts.  Defendant moved for judgment of acquittal on the ground that § 922(g) was unconstitutional.

The district court denied Defendant's motion and adjudicated him guilty on Count 1.[4]

In anticipation of sentencing, the probation officer prepared a Presentence Investigation Report ("PSR").  The PSR assigned Defendant a base offense level of 24, pursuant to U.S.S.G. § 2K2.1(a)(2).  Because Defendant was an armed career criminal under U.S.S.G. § 4B1.4, his offense level was enhanced to 33.  The PSR stated in relevant part that Defendant had the following prior convictions:  (1) an Illinois armed robbery conviction in 1999; (2) a Florida sale of cocaine conviction in 2004; (3) Florida convictions for sale of cocaine and marijuana in 2007; and (4) a Florida sale of cocaine conviction in 2007.  With a 3-level reduction for acceptance of responsibility, Defendant's total offense level was 30.  Based on a total of 30 and a criminal history category of VI, Defendant's guideline range was 168 to 210 months' imprisonment.  However, given the application of the armed-career-criminal enhancement, Defendant's guideline range became 180 to 210 months' imprisonment.

Defendant objected to his designation as an armed career criminal, arguing that his two drug convictions in 2007 did not occur on separate occasions.  He also

---

[4]  With the agreement of the Government, the district court granted Defendant's motion for judgment of acquittal as to Count 2.

argued that his armed robbery conviction was not a violent felony under the Armed Career Criminal Act ("ACCA").

At the sentencing hearing, Defendant reiterated the above objections. As to Defendant's armed robbery conviction, the district court determined that armed robbery under Illinois law qualified as a violent felony because it contained an element of use, attempted use, or threatened use of physical force against the person of another. In light of that ruling, the district court noted that it need not consider whether the 2007 drug convictions occurred on separate occasions. Nevertheless, the district court also concluded that Defendant's sale of cocaine and sale of cocaine and marijuana convictions were separate offenses for purposes of the ACCA. Explaining that Defendant's PSR incorrectly stated that his criminal history category was a VI, rather than a IV, the district court recalculated Defendant's guideline range as 135 to 168 months' imprisonment. However, based on his armed-career-criminal designation, the guideline range became 180 months. The district court consequently sentenced Defendant to 180 months' imprisonment. This appeal followed.

## II.    DISCUSSION

### A.    Motion to Suppress

Defendant argues that Officer Ursitti's *Terry* stop violated the Fourth Amendment because it was not supported by reasonable suspicion that Defendant

had engaged in criminal activity.  Specifically, Defendant asserts that the fact that he may have met what was a broad description of the suspects did not constitute a particularized fact sufficient to support a finding of reasonable suspicion.

"Because rulings on motions to suppress involve mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of law to the facts *de novo*."  *United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th Cir. 2012).  The Fourth Amendment protects an individual against unreasonable searches and seizures.  U.S. CONST. amend. IV.  "Not all interactions between law enforcement and citizens, however, implicate the scrutiny of the Fourth Amendment."  *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).  A seizure occurs only where law enforcement uses physical force or some show of authority to restrain the liberty of an individual.  *Id.*

An officer is permitted to seize a suspect for a brief, investigatory stop if the officer has a reasonable suspicion that the subject was involved in, or is about to be involved in criminal activity, and the stop "was reasonably related in scope to the circumstances which justified the interference in the first place."  *Id.* at 1186 (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20, 30 (1968)).  "Reasonable suspicion is determined from the totality of the circumstances and from the collective knowledge of the officers involved in the stop."  *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989) (citation omitted).  "An inchoate and

7

unparticularized suspicion or hunch of criminal activity is not sufficient to meet the reasonable suspicion standard." *United States v. Lopez-Garcia*, 565 F.3d 1306, 1313 (11th Cir. 2009) (quotation omitted).

Based on the totality of the circumstances, Officer Ursitti had reasonable suspicion to stop Defendant. Officer Ursitti testified that he received a dispatch call at 12:21 on a Saturday night regarding an armed robbery involving two black males with guns, wearing black shirts, who were last seen heading south and east toward Redbone's Bar and Grill, and who appeared to be in their twenties. The officer was aware that would-be robbers targeted this area because it contained a number of bars frequented on weekend evenings by Hispanic immigrants who had just been paid in cash. He further knew that, after robbing their victims, the robbers frequently fled on foot into the surrounding neighborhoods. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (explaining that an individual's presence in a high-crime area is a relevant factor in the reasonable-suspicion analysis).

While driving through one of the surrounding neighborhoods en route to Redbone's, Officer Ursitti observed Defendant—a black male who was wearing all black clothing—heading south only one-half mile from where the alleged robbery had occurred a few minutes earlier.[5] *See United States v. Hunter*, 291 F.3d 1302,

---

[5]  Defendant's argument that he did not meet the description of the two suspects described in the dispatch call because he was walking alone is unpersuasive, as the suspects could have split up.

1306 (11th Cir. 2002) (stating that an individual's proximity to illegal activity is relevant to the reasonable-suspicion analysis).  Defendant was walking in the area and along the trajectory that Officer Ursitti anticipated the robbers would flee, based on his familiarity with the neighborhood and the information provided by the police dispatcher. Although Defendant had been walking south, once the officer momentarily shone his light on Defendant and stopped the patrol car, Defendant turned around and began walking north, but then turned back to face the car, looked at his cell phone, and began making a call.  Even before Officer Ursitti made contact with Defendant, Defendant "started acting nervously and walking in circles."

Although the Government contends that the officer's initial approach to Defendant was a consensual encounter that was permissible in the absence of any suspicion by the police of wrongdoing or danger posed by Defendant, the district court concluded that Defendant was seized at the point at which Officer Ursitti approached him; i.e., that through a show of authority, the officer had restrained Defendant's movement.  We will assume that the district court is correct on this point, which means that to justify the investigatory stop, reasonable suspicion was required.

He also asserts that he was heading north, not south, when he encountered Officer Ursitti. However, the video footage from the dash cam shows otherwise.

The district court concluded that Officer Ursitti did possess reasonable suspicion sufficient to engage in a brief investigatory stop of Defendant, and thereafter to frisk him for a weapon. *See United States v. Sokolow*, 490 U.S. 1, 9 (1989) ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion."). And although Defendant argues that his nervous behavior after Officer Ursitti approached him is irrelevant to the reasonable-suspicion analysis because he had already been seized at that point, we do not reach that argument because we conclude that—even leaving aside subsequent behavior preceding the frisk which behavior the Government characterizes as quite suspicious and provocative—Officer Ursitti had reasonable suspicion to engage in a brief investigatory stop of Defendant at the outset. As the district court noted, "[s]topping an individual who matches the description of an armed robber in relative close proximity to the crime scene, within ten minutes of the crime occurring, and patting them down for weapons is well within the bounds of the Fourth Amendment and *Terry*." Accordingly, we affirm the district court's order denying Defendant's motion to suppress.

## B.    Constitutionality of 18 U.S.C. § 922(g)

Defendant argues that his conviction under § 922(g) should be vacated because it violates the Commerce Clause. However, as he readily concedes, this

10

argument is foreclosed by binding precedent. *See United States v. McAllister*, 77 F.3d 387, 389–91 (11th Cir. 1996) (holding that § 922(g) does not violate Congress's power under the Commerce Clause).

### C.    ACCA Enhancement

Defendant further argues that his sentence was improperly enhanced under the ACCA because (1) the Government failed to establish that his 2007 drug convictions occurred on separate occasions, (2) his three drug convictions do not qualify as serious drug offenses, and (3) his Illinois armed robbery conviction is not a violent felony.

We review *de novo* whether a prior conviction qualifies as an ACCA-predicate offense and whether the convictions occurred on separate occasions for purposes of the ACCA. *See United States v. Braun*, 801 F.3d 1301, 1303 (11th Cir. 2015); *United States v. Proch*, 637 F.3d 1262, 1265 (11th Cir. 2011). We review constitutional challenges *de novo*. *United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010).

Under the ACCA, a defendant who violates § 922(g) is subject to a mandatory minimum sentence of 15 years' imprisonment if he has three prior convictions for a violent felony or serious drug offense that were committed on occasions different from one another. 18 U.S.C. § 924(e)(1); 18 U.S.C. § 922(g). The Government bears the burden of proving by a preponderance of the evidence

that the prior convictions "arose out of a separate and distinct criminal episode." *United States v. Sneed*, 600 F.3d 1326, 1329 (11th Cir. 2010) (quotation omitted). To prove that the offenses occurred on separate occasions, the Government must use *Shepard*[6]-approved documents, such as the charging documents, plea agreements and colloquies, or jury instructions. *Id.* at 1332–33.

Here, the district court determined that Defendant was an armed career criminal based on a 1999 conviction in Illinois for armed robbery, a 2004 conviction in Florida for sale of cocaine, a 2007 conviction in Florida for sale of cocaine, and a 2007 conviction in Florida for sale of cocaine and marijuana. Defendant argues first that the Government did not meet its burden of proving that his two drug convictions in 2007 occurred on separate occasions. We disagree.

The charging documents list a separate and distinct date for each drug offense: May 31, 2006, and June 1, 2006. We consider offenses distinct "[i]f some temporal break happens between two offenses." *Proch*, 637 F.3d at 1265. Although the charging documents stated that the offenses occurred "on or about" those dates, the Government was only required to demonstrate by a preponderance of the evidence that the offenses occurred on separate occasions. *Sneed*, 600 F.3d at 1329. The inclusion of two distinct dates on the charging documents is "reliable and specific evidence" demonstrating that the two drug offenses "more likely than

---

[6] *Shepard v. United States*, 544 U.S. 13 (2005).

not arose out of separate and distinct episodes." *Cf. United States v. McCloud*, 818 F.3d 591, 596 (11th Cir. 2016) (quotations omitted) ("When it is equally likely that the crimes were committed simultaneously as it is that they were committed successively, the Government has not met its evidentiary burden under the preponderance of the evidence standard."); *see also United States v. Spears*, 443 F.3d 1358, 1360 (11th Cir. 2006) (concluding that two robberies that occurred minutes apart on the same date were two separate felonies for purposes of the ACCA's separate-occasions requirement).

Moreover, Defendant's reliance on the Supreme Court's decisions in *Mathis v. United States*, 136 S. Ct. 2243 (2016) and *Descamps v. United States*, 133 S. Ct. 2276 (2013) to argue that the district court erred by relying on non-elemental facts from the *Shepard* documents to determine that his prior drug offenses occurred on separate occasions is misplaced. Indeed, we have previously held that "a district court [has the] authority to determine 'the factual nature' of prior convictions for ACCA purposes, 'including whether they were committed on different occasions,' so long as the court limits itself to *Shepard*-approved documents." *See United States v. Overstreet*, 713 F.3d 627, 635 (11th Cir. 2013); *accord United States v. McCloud*, 818 F.3d 591, 595 (11th Cir. 2016). *Mathis* and *Descamps* examined the issue of when sentencing courts may apply the "modified categorical approach" to determine if a crime qualifies as an ACCA violent felony. *Mathis*, 136 S. Ct. at

13

2253; *Descamps*, 133 S. Ct. at 2282. Neither decision addressed whether a district court may refer to *Shepard* documents when determining whether two offenses occurred on separate occasions for purposes of the ACCA enhancement. *See Mathis*, 136 S. Ct. at 2248–54; *Descamps*, 133 S. Ct. 2282–93. Because neither *Mathis* nor *Descamps* are "clearly on point," they do not overrule or undermine our prior precedent to the point of abrogation. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.").

Defendant also argues for the first time on appeal that his three drug convictions under Florida Statute § 893.13(1) do not qualify as serious drug offenses. Because Defendant raises this argument for the first time on appeal, our review is limited to plain error.[7] *See United States v. Rosario-Delgado*, 198 F.3d 1354, 1355 (11th Cir. 1999). We also note that Defendant arguably invited any error by conceding before that district court that at least one of his 2007 drug convictions qualified as a serious drug offense. *See United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005) (explaining that a party invites an error when it requests or explicitly agrees with the district court's action). But regardless, as

---

[7] To establish plain error, "there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and . . . (4) the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (alteration accepted).

Defendant properly concedes, his argument is foreclosed by binding precedent. *See United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014) (holding that a violation of Florida Statute § 893.13(1) for sale, manufacture, delivery, or possession with intent to sell a controlled substance is a serious drug offense under the ACCA).

As a final matter, Defendant's argument that his sentence violates the Fifth and Sixth Amendments because he was sentenced above the statutory maximum based on facts that were not charged in the indictment or proven to a jury beyond a reasonable doubt is foreclosed by the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U. S. 224 (1998).  *See Almendarez-Torres*, 523 U.S. at 226–27 (concluding that the fact of a defendant's prior conviction need not be alleged in the indictment or proved to a jury beyond a reasonable doubt).

Because Defendant qualifies for the ACCA enhancement based on his three prior convictions for serious drug offenses, we need not consider whether his Illinois armed robbery conviction is a violent felony.  *See United States v. Gandy*, 710 F.3d 1234, 1239 n.6 (11th Cir. 2013) ("Because we hold that these three offenses qualify as violent felonies under the ACCA . . . . we need not address the [G]overnment's arguments that additional convictions qualify as violent felonies under the ACCA.").  We therefore conclude that the district court properly sentenced Defendant as an armed career criminal.

15

## III.    <u>CONCLUSION</u>

Based on the foregoing reasons, Defendant's conviction and sentence are

**AFFIRMED**.

MARTIN, Circuit Judge, concurring:

I concur in the result.